*In re* MARRIAGE OF GARY HOFFMAN, Petitioner-Appellee, and MARY HOFFMAN, Respondent-Appellant.

First District (1st Division)   Nos. 1—91—2770, 1—92—1010 cons.

Opinion filed June 27, 1994.

Steven A. Greenberg, Ltd., of Chicago (Steven A. Greenberg, of counsel), for appellant.

Springer, Casey, Dienstag & Devitt, of Chicago (Gary E. Dienstag, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, Mary Hoffman, seeks review of a circuit court order which dismissed her petition for an extension of maintenance payments from respondent, her former husband, Gary. We reverse that order and remand the case to the circuit court.

Mary and Gary were married on August 15, 1975. On February 3, 1988, the circuit court entered a judgment for dissolution of marriage which incorporated a settlement agreement covering support payments and property distribution. In the agreement, Gary promised to pay nonmodifiable maintenance to Mary for 24 months, beginning on February 1, 1988. The agreement contains the following clause, section 2.3, which is the subject of this appeal:

"Upon completion of the aforementioned non-modifiable maintenance payments, and in no event later than February 28, 1990, MARY shall have the right, upon reasonable notice, to petition a Court of competent jurisdiction for purposes of reviewing her right to additional and further spousal nonmodifiable maintenance if, and only if, she submits to physical examination and evaluation by a doctor or panel of doctors chosen by GARY, and further on the express condition that said right to review nonmodifiable maintenance shall arise only upon specific findings and diagnosis of said doctor or doctors indicating MARY to be suffering from the disease of Multiple Sclerosis at the time of said evaluation; further, that all costs attendant to and arising out of said medical evaluation of MARY shall be at the sole and exclusive expense of GARY, and GARY shall save and hold MARY harmless with respect to same."

On October 3, 1989, Mary filed a "petition to extend non-modifiable maintenance" in the circuit court. Alleging that she had been diagnosed with "myelitus and Multiple Sclerosis," Mary asked the court to extend the maintenance payments for two additional years.

On January 11, 1990, an agreed order was entered in which Gary was given 60 days to depose Mary's physician. Additionally, Gary was given the "right and opportunity" within that 60-day period to obtain an independent medical examination of Mary. During Gary's March 13, 1990, deposition of Mary's physician, Dr. McMahon, the doctor stated that he could not make a definitive diagnosis of multiple sclerosis at that time. At the next court hearing, Gary waived his right to have doctors of his own choosing examine Mary. Based upon Gary's waiver, the circuit court judge stated that if Mary produced any evidence that she has multiple sclerosis and if Gary did not select his panel of doctors, the court could decide the issue. However, the judge noted that he would not decide the issue without medical testimony. Gary demanded trial, and the circuit court continued the case. Gary's attorney then stated that he did not wish to waive his right to choose doctors to examine Mary if she utilized a doctor other than Dr. McMahon.

On June 7, 1990, Mary's counsel argued that as of that date, Gary had contravened section 2.3 of the settlement because he had

not yet selected any doctor to examine Mary. Gary responded that section 2.3 first required Mary to make a "good-faith" pleading that she had multiple sclerosis at the time she filed her petition. Only after such a pleading was made, he argued, would he have the right to have his own physicians examine her. After taking the deposition of Dr. McMahon, Gary desired to rely on Dr. McMahon's opinion that he could not conclude whether Mary had the disease. The trial judge dismissed Mary's petition without prejudice, stating that he was construing section 2.3 of the settlement agreement to require that Mary obtain a preliminary diagnosis of multiple sclerosis as a prerequisite to her filing a petition for the extension of maintenance.

Mary filed an amended petition on July 6, 1990, in which she alleged that she had been diagnosed as having a "spinal lesion indicative or compatible with multiple sclerosis or a similar disease." Gary moved to dismiss the amended petition, arguing that Mary's petition merely stated that she *might* have multiple sclerosis and that it did not conform with the trial court's prerequisites.[1] Letters from Mary's doctors, attached to the motion to dismiss, supported Gary's argument that Mary could not be definitively diagnosed with multiple sclerosis. Attorneys for both parties agreed to a conference call with Mary's physician in order to establish a diagnosis of multiple sclerosis. If such a diagnosis could be made, then Mary would be examined by a panel of doctors chosen by Gary. However, the physician would not participate in the conference call and preferred to be deposed.

On October 4, 1990, Gary petitioned the circuit court for attorney fees to cover the cost of taking the physician's deposition. At the hearing, the circuit court judge stated that Mary must provide Gary with medical evidence that she had been diagnosed with multiple sclerosis. Because Mary had failed to provide Gary with any medical evidence, Gary argued that her petition could not proceed. On August 8, 1991, the circuit court dismissed Mary's amended petition with prejudice because she did not timely come into court with the diagnosis of multiple sclerosis required under the terms of the settlement agreement. Mary appeals.

Mary argues that the circuit court improperly interpreted section 2.3 of the settlement agreement so as to require her to have a preliminary diagnosis of multiple sclerosis before she filed her petition to extend maintenance.

---

[1]Although the motion to dismiss was uncaptioned, Gary later identified it as a motion brought pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) in response to Mary's motion to dismiss it.

In Illinois, a property settlement between spouses, which has been approved by the court and incorporated in the judgment of dissolution, becomes merged in the judgment, and the rights of the parties thereafter rest on the judgment. (*Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 708, 467 N.E.2d 926; *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 399, 395 N.E.2d 1209.) In interpreting such an agreement, this court applies the normal rules for construing contracts (*In re Estate of Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366) so as to give effect to the intent of the parties. (*Sondin v. Bernstein*, 126 Ill. App. 3d at 708.) If no ambiguity exists on the face of the judgment, the intent of the parties will be determined only from the language of the instrument itself. *Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.

Applying these guidelines, the plain language of section 2.3 mandates that if Mary desires an extension of maintenance, she must file a petition seeking such relief by February 28, 1990. Once the petition is filed, section 2.3 limits the circumstances in which the circuit court may grant the extension. According to its terms, maintenance could be extended "if and only if" Mary submits to a physical examination and evaluation by "a doctor or panel of doctors chosen by Gary." Moreover, the circuit court could review maintenance "only upon specific findings and diagnosis of said doctor or doctors" which indicate that Mary was suffering from multiple sclerosis "at the time of said evaluation." Simply put, Mary had until February 28, 1990, to seek additional maintenance from Gary. Once she filed her petition, section 2.3 required of her no more. The circuit court erred in interpreting section 2.3 to require Mary to present a diagnosis of multiple sclerosis *before* she filed her petition. Under section 2.3, Mary could have sought an extension of maintenance any time before February 28, 1990. Once she did so, the burden shifted to Gary to prove that she did not suffer from multiple sclerosis. Section 2.3 does not contain a "good-faith" pleading requirement.

Contrary to Gary's arguments, such a reading of section 2.3 is not unreasonable, nor does it lead to an "open-ended maintenance obligation" as Gary suggests in his brief. Section 2.3 does not require that Mary be diagnosed with multiple sclerosis by February 28, 1990. Put another way, February 28, 1990, served as a date certain beyond which Mary's right to seek maintenance terminated. Mary timely filed her initial petition. Once she did so, section 2.3 required Gary to select a doctor who was then to perform the requisite examination to determine whether, at that time, Mary suffered from multiple sclerosis. All Gary had to do to extinguish Mary's right to future maintenance was to find a doctor willing to state that Mary did not so suffer.

The adjudicatory procedure undertaken by the circuit court here bore little resemblance to the procedure established in section 2.3 by the parties. Once Mary filed her petition, Gary attempted to contravene Mary's rights under section 2.3 by refusing to select a doctor to examine her. The court further obfuscated the proceedings by permitting Gary to rely on the findings of Dr. McMahon. As noted, section 2.3 states that the court could only extend maintenance if Mary "submits to a physical examination and evaluation by a doctor or panel of doctors chosen by Gary." Here, Dr. McMahon's diagnosis (or lack thereof) predated Gary's selection. However, the language of section 2.3 necessarily contemplates that such an evaluation occur *after* Gary has selected his physician, not before. Otherwise, section 2.3's requirement that Gary bear the cost of Mary's examination has no meaning. The rules of contract interpretation require us to give effect to all of a contract's terms and to avoid rendering other terms meaningless. (*De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689.) We are not surprised, given Gary's interpretation of the selection provisions, that he has made no effort to pay for the "examination" upon which he relies. In fact, Gary requested costs from Mary for the deposing of Dr. McMahon. Gary's conduct in this case indicates that he does not wish to fulfill any of his obligations under section 2.3.

The trial court compounded Gary's intransigence by "dismissing" Mary's timely filed petition and allowing her to refile it in June 1990. In so doing, the court ensured that the litigation would continue well past the February 28, 1990, time period agreed to by the parties in section 2.3. Given this scenario, the circuit court's August 8, 1991, order finding that Mary had failed to timely come into court with the requisite diagnosis must be reversed. Therefore, we reinstate Mary's October 1989 petition seeking an extension of maintenance and we remand the cause with instructions for Gary to arrange for Mary's examination by a doctor of his choosing in accordance with section 2.3.

Reversed and remanded with instructions.

CAMPBELL, P.J., and BUCKLEY, J., concur.