2000 ND 89

Steve WEBSTER, Bradford T. Webster, William J. Webster, Meredith Owens, and Blanche Webster, Plaintiffs and Appellants,

v.

Richard REGAN, Defendant and Appellee

No. 990130.

Supreme Court of North Dakota.

April 27, 2000.

Douglas A. Christensen of Pearson Christensen, Grand Forks, N.D., for plaintiffs and appellants.

Neil Thompson of Thompson and Thompson, Devils Lake, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Steve Webster, Bradford T. Webster, William J. Webster, Meredith Owens, and Blanche Webster appeal from the trial court's partial summary judgment and judgment. We affirm.

[¶ 2] In 1976, Helena Webster and Earl Webster stipulated to a property settlement. On December 1, 1976, the trial court incorporated the stipulation into a judgment, providing:

> Earl L. Webster, will grant unto the Plaintiff, Helena R. Websrer [sic], an easement for a strip of land 200 feet wide along the southwesterly shore of Morrison Lake from the meander line ... running ... to Gordon's Pass ... for a period of 99 years, and use of such 200 foot strip ... shall not be restricted in any way.

[¶ 3] On November 14, 1979, Helena Webster assigned the easement to Richard Regan. Steve Webster, Bradford T. Web-

ster, William J. Webster, Meredith Owens, and Blanche Webster ("Websters") are Earl Webster's successors through inheritance. On September 20, 1996, the Websters sued Regan to define the easement, seeking a determination of whether the 200–foot–wide easement was on the meander line's upland side or on its littoral side; Regan's natural resource removal rights; and the location of Gordon's Pass, the easement's termination point. The Websters later dismissed the natural resource removal claim.

[¶ 4] On July 9, 1997, Regan moved for summary judgment based on the December 1, 1976, judgment. On September 18, 1997, the trial court granted partial summary judgment decreeing the easement was general in nature and the littoral land between the meander line and the lake shore was for Regan's sole benefit. Regan moved for clarification of the partial summary judgment. On November 17, 1997, the trial court entered a clarification order, finding the 200–foot–wide easement was on the meander line's upland side.

[¶ 5] A trial was held on February 4, 1999. Despite the November 17, 1997, order clarifying summary judgment, the trial court accepted evidence of Helena Webster and Earl Webster's intentions regarding the easement's location in relation to the meander line. On March 18, 1999, the trial court issued findings of fact, conclusions of law, and order for judgment incorporating the earlier finding that the easement was on the meander line's upland side. The trial court also determined the location of Gordon's Pass and the scope of Regan's rights to use the easement's littoral land. The trial court found:

Since Gordon's Pass is described as being in Section 24 it is this Court's Finding that the easement terminates on its south end at a point on the north south running section line between Sections 23 and 24, where the meander line crosses from the NW ¼ of the SW ¼ of Section 24 to the NE ¼ of the SE ¼ of Section 23.

The trial court concluded, "[t]he Defendant Richard Regan has the right to use the riparian land [between] the meander line [and Morrison Lake] in any lawful manner."[1] On April 6, 1999, the trial court entered judgment. The Websters appealed to this Court.

[¶ 6] On February 18, 2000, this Court temporarily remanded for a more explicit finding regarding the easement's location in relation to the meander line and the factual basis for that determination. *Webster v. Regan,* 2000 ND 18, ¶ 8, 605 N.W.2d 808. On March 30, 2000, the district court. clarified its finding, providing it "found as a matter of law that the easement along the meander line was on the fee title side of the meander line or 200 feet from the line away from the lake and *not* on the meander land side of the line."

[¶ 7] The Websters argue the trial court erred by concluding the 200–foot–wide easement was on the meander line's upland side.[2] We disagree. A trial court's conclusions of law are fully reviewable on appeal. *Fargo Foods, Inc. v. Bernabucci,* 1999 ND 120, ¶ 10, 596 N.W.2d 38.

[¶ 8] The relevant clause of the December 1, 1976, judgment provides, "Earl L. Webster will grant unto the Plaintiff, Helena R. Websrer [sic], an easement for a strip of land 200 feet wide

---

1. According to Black's Law Dictionary, "littoral" relates to "the coast or shore of an ocean, sea, or lake" and "riparian" generally relates to "the bank of a river or stream (or occasionally another body of water such as a lake)." *Black's Law Dictionary* 945, 1328 (7th ed.1999).

2. This determination was originally labeled as a finding of fact before remand and a conclusion of law after remand. We will treat it as a conclusion of law. Whether a determination is a finding of fact or a conclusion of law is decided by the reviewing court and labels applied by the trial court are not conclusive. *Guardianship of Braaten,* 502 N.W.2d 512, 517 (N.D.1993).

along the southwesterly shore of Morrison Lake *from the meander line.*" (Emphasis added.) This language is ambiguous. *Webster,* at ¶ 8. Generally, courts look to extrinsic evidence to determine the parties' intention when a grant's language is ambiguous and the intent cannot be determined from the writing alone. N.D.C.C. §§ 9–07–03, 47–09–11; *Miller v. Schwartz,* 354 N.W.2d 685, 689 (N.D. 1984). However, this language was stipulated to by Helena Webster and Earl Webster and incorporated into the December 1, 1976, judgment.

> [W]hen a stipulation is incorporated into a judgment, the stipulation and judgment are merged, and courts look to the incorporating judge's intent, not the intent of the parties to the stipulation. *Botner v. Botner,* 545 N.W.2d 188, 190 (N.D.1996); *In re Marriage of Sylvester,* 412 N.W.2d 624, 628 (Iowa 1987). Extrinsic evidence of the parties' intent is considered only if, after an examination of the judgment, the stipulated language is ambiguous and the incorporating court's intent cannot be determined. *See In re Marriage of Hoffman,* 264 Ill.App.3d 471, 202 Ill.Dec. 89, 637 N.E.2d 628, 630 (1994); *In re Marriage of Winningstad,* 99 Or.App. 682, 784 P.2d 101, 103–04 (1989); *In re Marriage of Trearse; Janish,* 195 Cal.App.3d 1189, 1194, 241 Cal.Rptr. 257, 260–61 (Cal. App.1987).

*Webster,* at ¶ 7.

[¶ 9] Here, the incorporating court's intent cannot be determined. The trial court, therefore, properly considered extrinsic evidence showing Helena Webster and Earl Webster's intentions. After remand, the trial court found Earl Webster staked out a 200–foot–wide easement from the meander line away from the lake, Earl Webster assumed the meander line closely followed the ordinary high watermark or vegetation line, and the 200–foot–wide easement could not be located below the meander line because a significant portion would have been underwater.

■ [¶ 10] The trial court also concluded, as a matter of law, the easement was on the upland side. Ambiguous grants are interpreted in a grantee or its successor's favor. N.D.C.C. § 47–09–13; *Terrill v. Tuckness,* 985 S.W.2d 97, 106 (Tex.Ct.App. 1998) (discussing an interpretation presumption in favor of the grantee and against the drafter); *Windell v. Miller,* 687 N.E.2d 585, 589 (Ind.App.1997) (construing ambiguities in the grantee's favor when the deed was prepared by the grantor); *St. Pierre v. Grondin,* 513 A.2d 1368, 1370 (Maine 1986) (resolving ambiguities against the grantor and in favor of the grantee). The trial court determined the grant did not explicitly and clearly convey the land and, therefore, should be interpreted in Regan's favor. *See North Shore, Inc. v. Wakefield,* 530 N.W.2d 297, 300 (N.D.1995) (providing "our rules for construing deeds thus express a preference for clear and explicit reservations or exceptions in a deed").

■ [¶ 11] However, interpretation of ambiguities in a grantee's favor is a last resort rule of construction, applied when all other means of ascertaining the parties' intent have failed. *Red Hill Outing Club v. Hammond,* 722 A.2d 501, 506 (N.H. 1998). Here, non-application is especially proper because Helena Webster and Earl Webster *stipulated* to the ambiguous language and the record contains evidence of their intentions. After considering this extrinsic evidence, we hold the trial court did not err by concluding the 200–foot–wide easement was on the meander line's upland side. We make this determination without construing ambiguities in Regan's favor.

■ [¶ 12] The Websters also argue the trial court erred by concluding Regan can use the easement "in any lawful manner." We disagree. A trial court's conclusions of law are fully reviewable on appeal. *Fargo Foods,* at ¶ 10. The relevant language, as stipulated and incorporated into the De-

cember 1, 1976, judgment between Helena Webster and Earl Webster, provides:

> [U]se of such 200 foot strip, including the right to assign this easement, shall not be restricted in any way whatsoever provided such use is lawful and not in violation of the laws of the Township [sic], the County, the State and Federal Government.

[¶ 13] Language contained in a judgment that is clear and unambiguous must be construed to give effect to the unambiguous language. *Knoop v. Knoop*, 542 N.W.2d 114, 117 (N.D.1996). The language defining the easement's scope is clear and unambiguous. The trial court did not err by concluding Regan can use the easement "in any lawful manner."

[¶ 14] The Websters argue the trial court clearly erred in finding the location of Gordon's Pass. We disagree. A trial court's findings of fact are subject to the clearly erroneous standard of review under Rule 52(a), N.D.R.Civ.P. *Griffeth v. Eid*, 1998 ND 38, ¶ 6, 573 N.W.2d 829. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made. *Fargo Foods*, at ¶ 10. The trial court specifically relied on Regan's surveyed location of Gordon's Pass. We are not left with a definite and firm conviction a mistake has been made and the finding had evidentiary support. *See id.* at ¶ 10. The trial court did not clearly err in finding the location of Gordon's Pass.

[¶ 15] The trial court's partial summary judgment and judgment are affirmed.

[¶ 16] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., GERALD G. GLASER, S.J., concur.

[¶ 17] GERALD G. GLASER, S.J., sitting in place of MARING, J., disqualified.