2015 ND 284

**Robert D. KNORR and Cheri Knorr, Plaintiffs and Appellees**

v.

**Jon NORBERG and Alonna Norberg, Defendants.**

**Jon Norberg, Appellant.**

No. 20150107.

Supreme Court of North Dakota.

Dec. 7, 2015.

Sheldon A. Smith (argued) and David J. Smith (on brief), Bismarck, N.D., for plaintiffs and appellees.

James R. Bullis (argued) and Michael S. Montgomery (on brief), Fargo, N.D., for defendant and appellant Jon Norberg.

SANDSTROM, Justice.

[¶ 1] Jon Norberg appeals a district court judgment allowing his former parents-in-law, Robert and Cheri Knorr, to buy back certain real property under an alleged oral lease. He argues the district court erred in concluding the Knorrs established promissory estoppel and constructive trust. We affirm the judgment, concluding the district court's findings of promissory estoppel were not clearly erroneous.

I

[¶2] In 2004, Robert and Cheri Knorr purchased a lot and constructed a home on Lake Audubon in McLean County. According to the Knorrs, the home was built to accommodate Cheri Knorr's Parkinson's disease and was intended to be their retirement home. When the real estate market declined, the Knorrs say they were forced to mortgage the lake property as well as some of their other property to stay current on their loan obligations, and they were subsequently unable to make the mortgage payments on the property and reached out to family members for assistance. The Knorrs' eldest daughter, Alyssa Hollier, and her husband purchased a home owned by the Knorrs in Arizona and leased the property to the Knorrs with an option to repurchase. According to the Knorrs, a similar agreement was reached with another daughter and her husband, Alonna and Jon Norberg, regarding the lake home and property. The Norbergs allegedly agreed in late 2010 to purchase the lake home and lease it back to the Knorrs with an option to repurchase. In February 2011, the Knorrs executed a lease containing an option to purchase the home, and sent it to the Norbergs for their signature. Alonna Norberg signed the agreement and says she witnessed Jon Norberg sign it, but that document was never found. After the transfer, the Knorrs continued to live in the home, making monthly payments to the Norbergs in the amount of the monthly mortgage payment, paying all real estate taxes on the property, and paying all utilities, insurance, and other costs associated with the home.

[¶3] In December 2011, the Knorrs notified the Norbergs of their intent to exercise the option to repurchase. Jon Norberg refused to recognize the option. By this time, Jon and Alonna Norberg had separated. After trial in January 2013, the district court, finding clear and unequivocal evidence of an oral option agreement sufficient to constitute part performance removing the contract from the statute of frauds, concluded the Knorrs were entitled to buy back the property in accordance with the parties' oral agreement. On appeal, we held the Knorrs' conduct was not exclusively consistent with the existence of an option to purchase and concluded the doctrine of partial performance was not sufficient to take the oral contract out of the statute of frauds. *Knorr v. Norberg*, 2014 ND 74, ¶ 14, 844 N.W.2d 919. We reversed and remanded for consideration of the Knorrs' alternative theories of promissory estoppel and constructive trust. *Id.* at ¶¶ 15–16.

[¶4] On remand, after an evidentiary hearing, the district court found the Knorrs had satisfied their burden of establishing promissory estoppel and a constructive trust, and further ordered entry of judgment recognizing the Knorrs' option to repurchase the lake property.

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶6] On appeal, Jon Norberg argues the district court erred in concluding the Knorrs established promissory estoppel and constructive trust.

[¶7] The theories of promissory estoppel and constructive trust involve questions of fact subject to the clearly erroneous standard of review. *See Syversen v. Hess*, 2003 ND 118, ¶ 11, 665 N.W.2d 23; *Peterson Mech., Inc. v. Nereson*, 466 N.W.2d 568, 571 (N.D.1991). *See*

*also* N.D.R.Civ.P. 52(a)(6) ("Findings of fact, . . . whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). A district court's finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made. *Syversen*, at ¶ 9 (citing *Webster v. Regan*, 2000 ND 89, ¶ 14, 609 N.W.2d 733). In reviewing findings of fact, we view the evidence in the light most favorable to the findings and will not reverse the district court's findings simply because we may view the evidence differently. *Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 11, 867 N.W.2d 335. "In a bench trial, the district court determines the credibility of witnesses, and we do not second-guess those credibility determinations." *Danuser v. IDA Marketing Corp.*, 2013 ND 196, ¶ 31, 838 N.W.2d 488.

[¶ 8] Under the statute of frauds, codified in N.D.C.C. § 9-06-04(3):

> The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or by the party's agent:
>
> . . . .
>
> 3. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein . . . .

[¶ 9] Promissory estoppel, however, may bar the assertion of the statute of frauds if there is an oral agreement between the parties. *See Cooke v. Blood Systems, Inc.*, 320 N.W.2d 124, 127 (N.D. 1982). Promissory estoppel provides for the enforceability of an otherwise void or legally unenforceable agreement when one of the parties has acted to his or her detriment because of a representation or promise made by the other party as to future events. *See O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385, 389 (N.D.1982).

[¶ 10] "The elements of promissory estoppel are '(1) a promise which the promisor should reasonably expect will cause a change of position by the promisee; (2) a substantial change in the promisee's position through action or forbearance; (3) justifiable reliance on the promise; and (4) injustice which can only be avoided by enforcing the promise.'" *Erickson v. Brown*, 2012 ND 43, ¶ 14, 813 N.W.2d 531 (quoting *Dalan v. Paracelsus Healthcare Corp.*, 2002 ND 46, ¶ 16, 640 N.W.2d 726). The promise supporting promissory estoppel must be "clear, definite, and unambiguous as to essential terms" before it may be invoked. *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 357 (N.D.1986).

[¶ 11] Jon Norberg argues the district court erred in its conclusion that the actions of the parties in this case satisfy the requirements of promissory estoppel. In particular, he claims there is no evidence in the record that any promise giving the Knorrs an option to repurchase the lake home property was ever agreed to or made. The evidence in the record, however, supports the district court's finding of a promise made by the Norbergs to allow the Knorrs to repurchase the property. The district court's finding that the elements of promissory estoppel were present in this case is not clearly erroneous.

[¶ 12] The district court heard testimony from several members of the Knorr family, as well as Jon Norberg, regarding

the oral agreement between the parties. As part of their plan to obtain replacement financing on the property, all of the Knorr children and their spouses, including Jon Norberg, were included in the discussion of purchasing the property from the Knorrs. The Knorrs intended for their option to repurchase the lake home property to resemble their option to repurchase their Arizona home, which had been purchased by another daughter and her husband, Alyssa and Will Hollier. Members of the Knorr family testified the intention with both properties was to include a lease to the Knorrs with an option to buy back the properties for the price of indebtedness.

[¶ 13] According to testimony from the family members, they ultimately decided Jon and Alonna Norberg were best suited for the lake home transaction, given their income and financial abilities. Both Robert Knorr and his son, Bob Knorr, testified the parties were unable to get the written lease and buy-back option completed and signed by the deadline set by the bank, but they were both unconcerned about the unsigned option agreement because it had been thoroughly discussed and they were dealing with family whom they trusted. Robert Knorr testified he would not have transferred the property to the Norbergs without an agreement for the buy-back option. Eventually, a lease agreement containing an option to buy back the property was executed by the Knorrs and sent to the Norbergs to sign. Alonna Norberg testified she signed the agreement and witnessed Jon Norberg sign it, but that version of the document was never found. The Knorrs continued to live in the lake home and made monthly payments to the Norbergs for an amount equal to the Norbergs' mortgage payment. At trial, Jon Norberg acknowledged the existence of an oral lease agreement with the Knorrs and

his involvement in discussions regarding the buy-back option for the property.

[¶ 14] On the basis of this testimony, the district court made specific findings about the alleged agreement between the parties. The district court found a clear, definite, and unambiguous promise made by the Norbergs permitting the Knorrs to lease the property and repurchase it at any time by giving written notice to the Norbergs and by paying the purchase price of the sum of all existing liens on the property. Mutual cooperation with this promise was demonstrated by Jon and Alonna Norberg's actually allowing the Knorrs to lease the property as orally agreed. The terms of the agreement in this case were not preliminary, nor did the parties simply agree to negotiate the remaining terms in the future. The court clearly identified the amount of the lease payments (the Norbergs' monthly mortgage payment), when the option could be exercised (at any time upon written notice), and the manner in which the option to purchase could be exercised (upon written notice and payment of the remaining value of indebtedness). The terms of the oral agreement were unambiguous and clear. The Norbergs would purchase the property, not as an investment or business transaction, but to assist the Knorrs with their financial situation. Therefore, the district court's finding the first element of promissory estoppel satisfied was not clearly erroneous.

[¶ 15] The court found the Knorrs had substantially changed their position in reliance on the Norbergs' promise to reconvey the home. The court heard testimony the Knorrs discussed their financial situation with their children and their children's spouses, and only they were considered in carrying out the transaction because the Knorrs trusted them. The lake home was built with Cheri Knorr's Parkinson's dis-

ease in mind, and was intended to be the couple's retirement home. Robert Norberg testified he would not have transferred the property without a buy-back option. In reliance on the Norbergs' promise to reconvey the home, the Knorrs signed a purchase agreement and warranty deed conveying their home to the Norbergs. On the basis of this testimony, the district court appears to have properly found "a substantial change in the promisee's position through action or forbearance." *Erickson*, 2012 ND 43, ¶ 14, 813 N.W.2d 531. This finding is not clearly erroneous.

[¶ 16] The court also found both parties justifiably relied on the promise. Trial testimony made clear the Knorrs would not have transferred the property to the Norbergs without the option to repurchase the property. Jon Norberg himself testified he agreed to purchase the property only to assist the Knorrs financially and did not intend to purchase it as a business or investment transaction. The court found that Jon Norberg's testimony indicated he was relying on the buy-back option because he purchased the home with the intent to reconvey the property and with no intent to capitalize in any way on the transaction. The court further emphasized this intent by pointing out the Norbergs had never received any keys to the home, indicating they never intended to retain it. On the basis of this testimony, the district court found that both parties justifiably relied on the Norbergs' promise to purchase and reconvey the property. This finding is not clearly erroneous.

[¶ 17] In support of finding injustice can be avoided only by enforcing the Norbergs' promise, the court explained that although the mortgage on the home is in Jon Norberg's name, he has never paid for it. The court stated, "An injustice would occur absent enforcement of the parties'

oral agreement. Specifically, Jon Norberg would retain title to a home of significant value without having paid any consideration for it, and to the detriment of the Knorrs." The district court incorrectly found Jon Norberg gave no consideration in this case. He gave legal consideration by bearing the risk of taking on a loan for the home and by remaining under the obligation to repay the loan had the Knorrs ever been unable to continue making payments. This is valuable consideration. The district court is correct, however, that Jon Norberg retained title to the property without suffering any expenses in regard to it. After the Norbergs purchased the home and property, the Knorrs continued to live in the home, pay the monthly mortgage payment on the house, and pay all real estate taxes, utilities, insurance, and all other costs associated with the home and property. Jon Norberg testified the home was worth $550,000 at the time of the purchase. He also testified a market analysis on the home within the last few years concluded the home was worth $1.8 million. Jon Norberg further testified he was unwilling to allow the Knorrs to pay him the remaining debt still owed on the notes because he did not believe that was in his best interest.

[¶ 18] Evidence in the record supports the district court's finding injustice can be avoided only by enforcing the Norbergs' promise. Since the time of the transfer, the Knorrs have continued to make all necessary payments and pay all costs associated with the property. Aside from having the mortgage assigned to his name, Jon Norberg has not suffered any expenses in regard to the property. The actions of the parties following the transfer of the property were consistent with an agreement allowing the Knorrs to repurchase the property when they became able to do so. The district court found the Knorrs relied on this promise when they

transferred the property to the Norbergs. This finding is not clearly erroneous.

[¶ 19] Reviewing the evidence in the light most favorable to the findings, we are not left with a definite and firm conviction the district court made a mistake in finding promissory estoppel in this case. After making the requisite findings of fact, the district court adequately explained its decision to remove the agreement from the statute of frauds under the doctrine of promissory estoppel. Therefore, the district court's finding of promissory estoppel is not clearly erroneous.

### III

[¶ 20] We have considered the issue regarding a constructive trust, and it is unnecessary to resolve in this case. *See Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, ¶ 16, 603 N.W.2d 891 ("We need not address questions, the answers to which are unnecessary to the determination of an appeal."). We conclude the court's finding of promissory estoppel was supported by sufficient evidence in the record and was not induced by an erroneous view of the law. We therefore affirm the judgment of the district court.

[¶ 21] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, J., and WILLIAM F. HODNY, S.J., concur.

DANIEL J. CROTHERS, I concur in the result.

[¶ 22] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of McEVERS, J., disqualified.