ESTATE OF Bernard F. ZUBICKI,
Plaintiff and Appellant,

v.

Gary RUTHERFORD and Leisure
Industries, Inc., Defendants
and Appellees.

Civ. No. 950012.

Supreme Court of North Dakota.

Sept. 26, 1995.

Jon R. Brakke, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellant.

David L. Johnson, McNair, Larson & Carlson, Ltd., Fargo, for defendants and appellees. Appearance by Aaron Dorrheim, Law Clerk.

VANDE WALLE, Chief Justice.

The Estate of Bernard Zubicki appealed from a district court judgment holding that a sale and leaseback of equipment and inventory created a security interest, and was not a true lease. We affirm.

Heritage Marketing Inc. [Heritage] was a Florida corporation that manufactured replica "kit" cars. In 1990, Heritage borrowed money from Stafford Contracting Corporation Profit Sharing Plan [Stafford], a company owned by Bernard Zubicki, to purchase inventory. When Heritage was unable to repay the loan, Heritage issued a $400,000 promissory note to Stafford, secured by a security interest in Heritage's equipment and inventory. Heritage again defaulted, and the parties negotiated a settlement. On April 26, 1991, Heritage delivered a bill of sale for the equipment and inventory to Zubicki. By a "Sale and Leaseback Agreement" executed the same day, Zubicki leased the equipment and inventory back to Heritage for a term of three years. The assets remained in Heritage's possession at all times.

On December 6, 1991, Heritage executed a bill of sale for its equipment and inventory to Classic Roadsters, Ltd. [Classic], a North Dakota company. The assets were transferred to Classic's operation in Fargo. Classic gave a security interest in these assets to the State Bank of Fargo [Bank] and the Small Business Administration [SBA] to finance the purchase.

Classic filed for bankruptcy in September 1992 and the bankruptcy trustee eventually abandoned Classic's property, including the disputed equipment and inventory. Gary Rutherford, a former owner of Classic, held a perfected security interest in Classic's assets, including the disputed equipment and inventory. Rutherford took possession of the disputed assets upon the trustee's abandonment. Leisure Industries, Inc. [Leisure], a corporation owned by Rutherford, assumed the loan obligation to the Bank and SBA. Rutherford, the Bank, and SBA have recorded financing statements covering the disputed assets. Rutherford and Leisure have agreed to apply any recovery in this action to the loan.

Zubicki filed a motion in the bankruptcy proceedings seeking a determination that the assets were not property of the bankruptcy estate. When the trustee abandoned the property and Rutherford took possession, Zubicki sued Rutherford and Leisure to determine ownership of the property. The parties stipulated to a sale of the disputed assets to a third party for $180,000, with the prevailing party in this action to receive the proceeds. Zubicki died in 1993, and his estate was substituted as a party.

The parties stipulated to the facts and to the validity and admissibility of numerous documents. The trial court determined that the sale and leaseback agreement between Heritage and Zubicki was not a true lease, but created a security agreement. The trial court further concluded that, because Zubicki had failed to file a financing statement, his security interest in the assets was unperfected and Rutherford's perfected security interest therefore had priority. The trial court

ordered that Rutherford and Leisure recover the sale proceeds.

The sole question presented on appeal is whether the sale and leaseback agreement created a true lease or a security interest. If it was a true lease, Zubicki retained title to the assets; however, if it created a security interest, Zubicki failed to perfect that interest and Rutherford's perfected security interest has priority.

■ The parties initially disputed whether Florida or North Dakota law governed construction of the sale and leaseback agreement. At oral argument, however, each conceded that the choice of law would not affect the outcome. Both Florida and North Dakota have adopted the Uniform Commercial Code. *See* Fla.Stat. Chs. 671–680 (1993); Title 41, N.D.C.C. We will apply Florida law because the agreement was between a Florida resident and a Florida corporation, the assets were located in Florida at the time of the agreement, and, consistently, the agreement expressly provides that it is to be governed by Florida law.

■ Fla.Stat. § 671.201(37) (1993) [U.C.C. § 1–201(37) ] defines a security interest:

"(37) 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (s. 672.401) is limited in effect to a reservation of a security interest.... Whether a transaction creates a lease or security interest is determined by the facts of each case; however:

"(a) A transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and;

"1. The original term of the lease is equal to or greater than the remaining economic life of the goods;

"2. The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

"3. The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

"4. The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

"(b) A transaction does not create a security interest merely because it provides that:

"1. The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

"2. The lessee assumes the risk of loss of the goods or agrees to pay taxes; insurance; filing, recording, or registration fees; or service or maintenance costs with respect to the goods;

"3. The lessee has an option to renew the lease or to become the owner of the goods;

"4. The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

"5. The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed...."

Fla.Stat. § 679.102 (1993) [U.C.C. § 9–102] also provides that Chapter 679 [U.C.C. Art. 9] governing secured transactions applies to "any transaction (regardless of its form) which is intended to create a security interest," including leases intended as security. The Official Comment to U.C.C. § 9–102 clarifies:

"Transactions in the form of consignments or leases are subject to this Article if the

understanding of the parties or the effect of the arrangement shows that a security interest was intended ... When it is found that a security interest as defined in Section 1–201(37) was intended, this Article applies regardless of the form of the transaction or the name by which the parties may have christened it."

It is the substance of the agreement that controls, not the titles or labels attached by the parties. *See* 8 Anderson, Uniform Commercial Code § 9–102:25 (3d ed. 1985); 68A Am.Jur.2d *Secured Transactions* § 123 (1993); *see also North Dakota Public Service Commission v. Valley Farmers Bean Association,* 365 N.W.2d 528 (N.D.1985); *Wallwork Lease and Rental Co. v. JNJ Investments, Inc.,* 303 N.W.2d 545 (N.D.1981); *State Bank of Burleigh County v. All–American Sub, Inc.,* 289 N.W.2d 772 (N.D.1980).

Courts construing Fla.Stat. § 671.201(37) (1993) have consistently stressed that whether an agreement denoted a lease is a true lease or a security agreement must be determined by the facts of each case. *See, e.g., In re Royal Food Markets, Inc.,* 121 B.R. 913 (Bankr.S.D.Fla.1990); *Key Capital Corp. v. Keen,* 535 So.2d 345 (Fla.Dist.Ct.App.1988). As an aid to this determination, the courts have developed a lengthy list of factors which are indicative of a security agreement rather than a true lease. *See In re All American Manufacturing Corp.,* 172 B.R. 394 (Bankr. S.D.Fla.1994); *In re Howell,* 161 B.R. 285 (Bankr.N.D.Fla.1993); *Sellers v. Frank Griffin AMC Jeep, Inc.,* 526 So.2d 147 (Fla.Dist. Ct.App.1988); *see also* 2 White & Summers, Uniform Commercial Code § 23–3 at 251 (3d ed. 1988) ["Courts take into account a wide variety of other factors in making their determination."]. The enumerated factors are not, however, exclusive, and the court may consider any fact or circumstance relevant to the transaction. *In re All American Manufacturing Corp., supra; In re Howell, supra.*

The trial court considered numerous factors in concluding that the agreement here created a security interest rather than a true lease, including: Heritage was to insure, maintain, and repair the property; Heritage was to pay taxes on the property; and, Heritage bore the risk of loss or damage to the property. Zubicki's Estate asserts that these factors are no longer valid after the 1987 amendment to U.C.C. § 1–201(37), and the test now focuses upon retention of equity and ownership by the lessor.

We need not determine whether those factors remain viable after the 1987 amendment to § 1–201(37) because, in this case, there is one overriding factor which clearly establishes that the agreement between Heritage and Zubicki was intended to create a security interest: the nature of the property covered by the agreement. In addition to an enumerated list of equipment, this lease also applied to:

"Heritage's present and after-acquired raw materials and inventory;

"Heritage's present and after-acquired tools, machinery and equipment;

"Heritage's present and after-acquired machinery molds for the Heritage 500K Replica kit and Rolling Chassis and Heritage Legacy;

"The present and after-acquired finished good inventory."

The Estate does not cite, nor does our research disclose, any cases or other supporting authority validating a true lease of inventory, raw materials, or after-acquired property.

By definition, inventory consists of goods held for sale or lease. Fla.Stat. § 679.109(4) (1993) [U.C.C. § 9–109]. The Official Comment to Section 9–109 clarifies that "[t]he principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale." The Supreme Court of Florida has defined a true lease as "an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner." *Kraemer v. General Motors Acceptance Corp.,* 572 So.2d 1363, 1366 (Fla.1990). Similarly, Black's Law Dictionary 889 (6th ed. 1990) defines "lease" as an "[a]greement under which owner gives up possession and use of his property for valuable consideration and for definite term and at end of term owner has absolute right to retake, control and use property." Obviously, Heritage did not intend to return

its inventory to Zubicki at the end of the lease term. Heritage was in the business of manufacturing and selling replica car "kits." It could not possibly stay in business (and make payments to Zubicki) if it could not transfer title to inventory items to buyers, but was required to return its inventory to Zubicki at the end of the three-year term.

Even more inexplicable is the agreement's inclusion of after-acquired property. A lease contemplates a delivery of property for a specified period of time. Inclusion of an after-acquired property clause is wholly inconsistent with a true lease. It is not, of course, inconsistent with a security interest; rather, the Code expressly provides for the inclusion of after-acquired property in a security agreement. Fla.Stat. § 679.204 (1993) [U.C.C. § 9–204]. A present "lease" cannot cover property not within the contemplation of the parties at the time of the agreement. Certainly Zubicki was not agreeing to furnish or lease additional raw materials, inventory, and equipment upon demand by Heritage for the agreed upon monthly rental payments.

The after-acquired property clauses in this agreement can only logically be construed to create a security interest. The parties' use of language ordinarily found in security agreements is a strong indication that the agreement was intended to create a security interest. *In re Brower,* 104 B.R. 226 (Bankr.N.D.1988). Any other construction of this language would lead to absurd or ludicrous results. *See Schwarting v. Schwarting,* 310 N.W.2d 738 (N.D.1981).

We conclude that the trial court did not err in determining that the sale and leaseback agreement was not a true lease but was intended to create a security interest. The judgment is affirmed.

SANDSTROM, NEUMANN, MESCHKE, JJ., and WILLIAM W. McLEES, District Judge, concur.

WILLIAM W. McLEES, District Judge, sitting in place of LEVINE, J., disqualified.