2016 ND 141

**CONSTELLATION DEVELOPMENT, LLC, Plaintiff and Appellant**

v.

**WESTERN TRUST COMPANY, Gary G. Hoffman, Trustee, and Dabbert Custom Homes, LLC, Defendants and Appellees.**

No. 20150319.

Supreme Court of North Dakota.

July 7, 2016.

Michael L. Gust (argued) and Joshua M. Feneis (appeared), Fargo, N.D., for plaintiff and appellant.

Roger J. Minch, Fargo, N.D., for defendant and appellee Gary G. Hoffman.

Brian W. Varland (argued), Mark J. Heley (on brief), Minneapolis, MN, and Seth A. Thompson (appeared), Bismarck, N.D., for defendant and appellee Dabbert Custom Homes, LLC.

SANDSTROM, Justice.

[¶ 1] Constellation Development, LLC, appeals from a judgment dismissing its claims against Western Trust Company and its trustee, Gary Hoffman (collectively "Western"), for breach of contract and equitable and promissory estoppel, and against Dabbert Custom Homes, LLC, for tortious interference with a business contract. Because we conclude the district court did not err in ruling as a matter of law Western did not breach any agreement it had with Constellation, we affirm the judgment.

## I

[¶ 2] On September 30, 2013, Constellation agreed in writing to purchase about 24 acres of land in Cass County from Western, with the remaining balance to be paid on October 14, 2013. The agreement also provided:

*This has changed to a three-year purchase option to run concurrently*

FIRST RIGHT OF REFUSAL: The Seller will grant and give to the Buyer the First Right of Refusal for 5 years on the additional 62 acres as shown on Exhibit "B" attached to this Agreement should the Seller decide to sell any more land. The purchase price in reference to the additional land will be at $18,000.00 per acre if the Seller decides to sell additional land. If Seller decides to sell more land the Buyer will have 14 days to enter into a Purchase Agreement and 30 days to close the transaction or he will lose his First Right of Refusal.

The underlined sentence above the printed paragraph was handwritten and initialed by Hoffman and Constellation's representative.

[¶ 3] On August 26, 2014, Constellation's representative wrote a letter to Western stating: "Per the terms of our purchase agreement dated September 30, 2013—I wish to exercise my option to purchase the balance of real estate referenced in the agreement." On September 5, 2014, Constellation agreed in writing to purchase the additional property consisting of approximately 64 acres from Western:

The Purchser [sic] will therefore pay the sum of $1,150,992.00 (this price is determined by $18,000.00 × 63.944 Acres) property is surveyed and the selling price will be: $1,150,992.00 for the 63.944 Acres; these are the following terms and conditions:

. . . .

(1) A $2500.00 herewith is a non-refundable payment at the execution of this Agreement with the said check to be made payable to First Bank and Trust of Brookings, South Dakota who is the Seller's 1031 Exchanger. The remaining balance of $1,148,492.00 is to be paid on or before October 13, 2014.

(1a) Because this is a 1031 Exchange, the said closing shall be on or before October 13, 2014.

Constellation gave Western two different checks for $2,500, and each check was returned for insufficient funds. Constellation alleged that it offered Western a $2,500 cashier's check on October 8 or 9, 2014, but Western refused it.

[¶ 4] On October 9, 2014, Western sent Constellation a "Notice of Termination of Purchase Agreement," which stated:

PLEASE TAKE NOTICE that Western Trust Company, through its trustee, Gary G. Hoffman, hereby terminates that certain Purchase Agreement dated September 5, 2014, a copy of which is attached, along with the check for $2,500.00 tendered by Constellation Development, LLC at the time the Purchase Agreement was signed.

The check for $2,500.00 has been returned twice for non-sufficient funds.

PLEASE TAKE NOTICE that unless Constellation Development, LLC pays Western Trust Company $1,150,992.00 in full, on or before Monday, October 13, 2014, the attached Purchase Agreement will be deemed terminated and null and void by Western Trust Company, and Western Trust Company will reserve all rights for breach of the Purchase Agreement against Constellation Development, LLC, and any other responsible parties, and will proceed to mitigate its damages by, among other things, begin-

ning efforts to sell the property described in the attached Purchase Agreement to other parties or entities.

Constellation did not make the full payment of $1,150,992 to Western on or before October 13, 2014. On October 29, 2014, Western agreed in writing to sell Dabbert Custom Homes, LLC, the 64 acres of property at the price of $19,000 per acre. Western conveyed the property to Dabbert on December 8, 2014.

[¶ 5] Constellation sued Western, seeking damages for breach of contract and seeking to be allowed to complete the purchase of the property under theories of equitable and promissory estoppel, alleging there had been an oral extension of the September 2014 purchase agreement. Constellation also sought damages from Dabbert for tortious interference with a business contract. The district court granted summary judgment dismissing all of Constellation's claims, concluding Western did not breach the agreement with Constellation when it refused to sell it the 64 acres, and because there was no breach, Constellation could not prevail against Dabbert on the tortious interference claim. The court did not address Constellation's estoppel claims.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Constellation's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] Constellation argues the district court erred in granting summary judgment dismissing its breach of contract claim.

[¶ 8] The standard of review for summary judgment is well-established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754.

[¶ 9] The district court ruled that the agreements were unambiguous and that after Constellation exercised the purchase option in the September 2013 agreement, the resulting September 2014 purchase agreement required the nonrefundable $2,500 payment be made at the time of execution and the remainder be paid by October 13, 2014. Because the payments were not made, the court ruled the purchase option expired. The court further ruled Western "decide[d]" to sell the additional property when it entered into the September 5, 2014, purchase contract, which triggered the "First Right of Refusal" provision in the September 2013 pur-

chase agreement. Because Constellation failed to close the transaction within 30 days after execution of the September 2014 purchase agreement, the court also held Constellation lost the first right of refusal under the September 2013 purchase agreement as well. Furthermore, because Western did not breach its agreement with Constellation when it failed to sell the 64 acres to Constellation, the court ruled Constellation was unable to prove an essential element of its tortious interference claim against Dabbert.

[¶ 10] Constellation argues the district court erred in ruling the September 2013 agreement was unambiguous. Constellation argues the handwritten sentence above the printed "First Right of Refusal" clause, stating, "This has changed to a three-year purchase option to run concurrently," should be interpreted as creating a separate purchase option and a separate right of first refusal based on the language "to run concurrently." Western and Dabbert argue the handwritten sentence, which controls over the printed part, see N.D.C.C. § 9–07–16, created only a purchase option because it replaced the right of first refusal provision based on use of the phrase, "[t]his has changed." We need not decide whether an ambiguity was created because, even if the 2013 agreement created both a purchase option and a right of first refusal, Constellation could not prevail.

[¶ 11] In *Estate of Grengs*, 2015 ND 152, ¶ 27, 864 N.W.2d 424, we explained:

> An option to purchase and a right of first refusal are different. An option to purchase creates in the option holder the power to compel the owner of the property to sell it at a stipulated price whether or not the owner is willing to sell. *Berry–Iverson Co. of N.D., Inc. v. Johnson*, 242 N.W.2d 126, 130 (N.D.

1976); *see also* 77 Am. Jur. 2d *Vendor and Purchaser* § 27 (2015). A right of first refusal is often referred to as a preemptive right because "it allows the holder to preempt a sale to an interested third party, and requires the landowner to offer the property to the right holder on the same terms." *Northern Plains Alliance, L.L.C. v. Mitzel*, 2003 ND 91, ¶ 14, 663 N.W.2d 169. We have further explained:

> **The holder of a right of first refusal on a piece of land only has** the right to receive an offer to buy the land. Generally, it is a contractual right to preempt another because the right is conditional on the owner's decision that an offer from a third party is acceptable. More specifically, the right is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it. Only then can the holder of the right decide whether or not to create a contract on the same terms that the owner is willing to accept from the third party. More precisely, the occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which "triggers" the right of first refusal that "ripens" into an option. The option then can be exercised like any other option contract.

> *Id.* (quoting 3 Eric Mills Holmes, *Corbin on Contracts* § 11.3 (rev. ed.1996)); *see also Berry–Iverson*, at 130 (explaining the difference between a pre-emption and an option).

While "[a]cceptance of an option for the sale of land within the time allowed and according to its terms converts the option into a binding executory contract of sale," *Northern Plains Alliance, L.L.C. v. Mit-*

*zel*, 2003 ND 91, ¶ 16, 663 N.W.2d 169, "the right of first refusal is contingent on the property owner's receipt of an acceptable bona fide offer from a third party," and "[o]nce the owner receives an acceptable offer and notifies the right-holder, the right of first refusal is triggered." *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 584 (Minn.Ct.App.2003); *see generally Mitzel*, at ¶¶ 17–19.

[¶ 12] Despite "the apparent conflict between the provisions of a fixed-price option and a right of first refusal," it is not uncommon for real property documents to contain both provisions. W. Wakefield, Annot., *Construction and effect of options to purchase at specified price and at price offered by third-person, included in same instrument*, 22 A.L.R.4th 1293, 1296 (1983), and cases collected therein. Most of the caselaw interpreting the coexistent provisions involve situations in which there has been a receipt of a third-party offer before an attempted exercise of the fixed-price option, and the authorities are split on the question whether the fixed-price option is extinguished by the preemptive right holder's failure to respond to notice of a third-party's offer to purchase. *Id.* at §§ 3, 4. The result often turns on the specific language of the provisions. *Id.* There are far fewer cases addressing the question whether a right of first refusal provision survives after the exercise of a fixed-price option. *Id.* at § 6. For example, in *Sinclair Refining Co. v. Allbritton*, 147 Tex. 468, 218 S.W.2d 185, 187–189 (1949), the court held that once a fixed-price purchase option is validly exercised and the relationship is thereby changed to that of vendor and purchaser, any rights under a purchase refusal provision in the same agreement ceases to exist. *Allbritton* supports the argument that Constellation's exercise of the purchase option resulting in the September 2014 purchase agreement extinguished the right of first refusal provision.

[¶ 13] However, even if the right of first refusal provision was not extinguished, Constellation would not prevail. Constellation argues the district court erred because Western did not communicate the terms of the offer it accepted from Dabbert, which was necessary to trigger the right of first refusal provision. The problem with Constellation's argument is that, although labeled "First Right of Refusal," this provision in the September 2013 agreement did not give Constellation a right of first refusal.

[8–10] [¶ 14] "It is the substance of the agreement that controls, not the titles or labels attached by the parties." *Estate of Zubicki v. Rutherford*, 537 N.W.2d 559, 562 (N.D.1995); *see also BTA Oil Producers v. MDU Res. Grp., Inc.*, 2002 ND 55, ¶ 63, 642 N.W.2d 873; *Wallwork Lease and Rental Co., Inc. v. JNJ Invs., Inc.*, 303 N.W.2d 545, 547 (N.D.1981); *Lee v. N.D. Park Serv.*, 262 N.W.2d 467, 474 n. 3 (N.D. 1977). "A preemptive right to purchase real estate can take the form of either a 'right of first refusal' or a 'right of first offer.'" *Kelly v. Ammex Tax and Duty Free Shops W., Inc.*, 162 Wash.App. 825, 256 P.3d 1255, 1258 (2011). While a right of first refusal is triggered when the owner receives an offer from a third party and decides to sell, a right of first offer is triggered when the owner decides to offer the property for sale without first receiving an offer from a third party. *See SKI, Ltd. v. Mountainside Props., Inc.*, 198 Vt. 384, 114 A.3d 1169, 1174–1175 (2015). If the grantee of a right of first offer does not accept that offer, "the seller is then free to sell to anyone else on the terms rejected by the grantee or on terms which are better, but not worse, for the seller." 92 C.J.S. *Vendor and Purchaser* § 180, at 157 (2010) (footnote omitted); *see also* 77

Am. Jur. 2d *Vendor and Purchaser* § 33 (2006); M. Kahan, S. Leshem, and R. Sundaram, *First–Purchase Rights: Rights of First Refusal and Rights of First Offer*, 14 Am. L. & Econ. Rev. 331, 332 (2012).

[¶ 15] The terms of the September 2013 agreement did not require Western to inform Constellation of any third-party offer for the property before it could sell to the third party. Rather, the provision speaks only in terms of the seller's "deci[sion]" to sell, and therefore closely resembles a right of first offer. The provision states, "If Seller decides to sell more land the Buyer will have 14 days to enter into a Purchase Agreement and 30 days to close the transaction or he will lose his First Right of Refusal." Even if the district court was incorrect in ruling Western "decide[d]" to sell when it entered into the September 2014 purchase agreement, Western informed Constellation in no uncertain terms that it had "decide[d]" to sell the property in the October 9, 2014, notice of termination of the purchase agreement by stating it would "begin[ ] efforts to sell the property described in the attached Purchase Agreement to other parties or entities." This notice triggered the right of first offer, but Constellation did nothing to accept the offer.

[¶ 16] We conclude the district court did not err in ruling as a matter of law Western did not breach any agreements it had with Constellation. Because there was no breach, Constellation's tortious interference with a contract claim was also appropriately dismissed on summary judgment. *See Mitzel,* 2003 ND 91, ¶ 23, 663 N.W.2d 169.

### III

[¶ 17] Constellation argues the district court erred in dismissing its equitable and promissory estoppel claims against Western based on an alleged oral extension of the time to make its required payments under the September 2014 purchase agreement. The district court did not address this contention in its decision.

[¶ 18] Constellation pled equitable and promissory estoppel in its first amended complaint and alleged:

Pralle [president of Constellation] offered the cashier's check to Hoffman as the earnest money payment and Hoffman refused the check.

Throughout this period, Hoffman and Pralle had numerous conversations and meetings in which Hoffman assured Pralle that the purchase of the 63.944 acres would be completed and Pralle did not need to worry about the earnest money payment.

Additionally, Hoffman agreed to grant Pralle an extension on the closing date. The September 5, 2014 Purchase Agreement contained no provision that modification must be in writing.

. . . .

Despite this letter from attorney Minch and the passing of the October 13, 2014 deadline, Hoffman continued to assure Pralle that they would conclude Constellation's purchase of the 63.944 acres consistent with the terms of the purchase option from the September 30, 2013 Purchase Agreement.

Constellation also submitted an affidavit of Pralle, stating:

After Gary Hoffman refused to accept the certified funds, I received *Exhibit F* attached to the First Amended Complaint, which is a true and correct copy of the Notice of Termination of Purchase Agreement received from Roger Minch with the Serkland Law Firm. I was surprised when I received the Notice of Termination of Purchase Agreement as I had had multiple discussions with Gary Hoffman of extending the timeframe to

close this deal. Attached to this Affidavit as *Exhibit A* is a summary of phone calls that I had with Mr. Hoffman from my cell phone regarding this transaction. Additionally, it is my recollection that I had multiple phone calls from my home phone to the cell phone of ·Gary Hoffman.... During October, November and December of 2014, Mr. Hoffman continually told me that the. land was mine to be purchased pursuant to the terms of the September 2014 Purchase Agreement at any time I desired. Based upon these representations, I took no further action to enforce the terms of the September 2014 Purchase Agreement. Had I known that Mr. Hoffman was not going to honor his word in granting the extension, I would have taken steps to enforce the September 2014 Purchase Agreement, including commencing a lawsuit if it came to that.

[¶ 19]  The September 5, 2014, purchase agreement was in written form in compliance with the statute of frauds under N.D.C.C. § 9–06–04(3). We have often stated that part performance of an oral contract, promissory estoppel, or equitable estoppel may bar the assertion of the statute of frauds under N.D.C.C. § 9–06–04 if, in fact, there is an oral agreement between the parties. *See, e.g., Knorr v. Norberg*, 2015 ND 284, ¶ 9,·872 N.W.2d 323; *Mellon v. Norwest Bank*, 493 N.W.2d 700, 703–04 (N.D.1992); *Cooke v. Blood Sys., Inc.*, 320 N.W.2d 124, 127 (N.D.1982); *Wilhelm v. Berger*, 297 N.W.2d 776, 779 (N.D.1980); *Nelson v. TMH, Inc.*, 292 N.W.2d 580, ·583–84 (N.D.1980). We have also applied these estoppel principles in cases involving the sale of goods and N.D.C.C. § 41–02–08 (U.C.C.2–201), the statute of· frauds contained in the Uniform Commercial Code. *See, e.g., Jamestown Terminal Elevator, Inc.· v. Hieb*, 246 N.W.2d 736, 740–42 (N.D. 1976); *Farmers Coop. Ass'n v. Cole*, 239 N.W.2d 808, 812–14 (N.D.1976); *Danger-*

*field v. Markel*, 222 N.W.2d 373, 377–78 (N.D.1974). .Here Constellation is · attempting· to ·orally modify the written purchase agreement which complied with the statute of frauds under N.D.C.C. § 9–06–04(3). .Where, as here, the written purchase agreement does not specify how the parties may modify its terms, we look to N.D.C.C. § 9–09–06. *See Valentina Williston, LLC v. Gadeco, LLC,·* 2016 ND· 84, ¶ 14, 878 N.W.2d 397.

[¶ 20]  Section 9–09–06, N.D.C.C., provides:

> A contract in writing may be altered by a contract in writing or by an executed oral agreement *and not otherwise.* An oral agreement is executed within the meaning· of this section whenever the party performing has incurred a detriment which that party was not obligated by the original contract to incur.

(Emphasis added.) In *Nelson v. Glasoe*, 231 N.W.2d 766, 768 (N.D.1975), this Court said estoppel could remove the bar of the statute of frauds to allow oral modification of a written contract, but that case involved the sale of goods and the "less strict standard" under the Uniform Commercial Code. *Dangerfield*, 222 N.W.2d at 378. Constellation has not cited, and we have not found, any North Dakota case allowing an unexecuted oral agreement through estoppel principles to modify a written contract involving the sale or lease of real property. Rather, this Court in cases involving real estate transactions has strictly construed N.D.C.C. § 9–09–06 and its predecessor statutes. *See ·Valentina Williston, LLC,* 2016 ND 84, ¶¶ 15–21; 878 N.W.2d 397; *Gajewski v. Bratcher*, 221 N.W.2d 614, 640–43 (N.D.1974); *Thompson v. Baker*, 52 N.D. 366, 370, 203 N.W. 195, 196 (1925); *McCulloch v. Bauer*, 24 N.D. 109, 117, 139 N.W. 318, 320 (1912); *Cughan v. Larson*, 13 N.D. 373, 379–80, 100 N.W. 1088, 1089–90 (1904); *Foster v.*

*Furlong*, 8 N.D. 282, 285, 78 N.W. 986, 987 (1899). As this Court explained in *Cughan*, 13 N.D. at 379–80, 100 N.W. at 1089–90:

> Section 3936, Rev. Codes 1899, provides: "A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise." This section has been construed by this court to prohibit an oral extension of the time of payment of a promissory note by an agreement to do so that is unexecuted by either party. *Foster v. Furlong*, 8 N.D. 282, 78 N.W. 986. Such being the law in respect to the contract involved in that case, no good reason can be given why that case is not controlling in this case. In fact, this case presents stronger reasons for the strict application of the section, as the contract here involved is one within the statute of frauds, and of necessity must be in writing if unperformed..... The respondent contends that the modification proposed relates solely to the performance of the contract, and is, therefore, not inhibited by that section. But such a construction would be reading into the section an exception not warranted by the language of the section, and one coming within the evil to be guarded against by the enactment of the section; that is, that parties should not be burdened by claims of modified contracts that were never entered into. As stated by the court in *Rucker v. Harrington*, 52 Mo.App. 481 [(1893)]: "It is therefore at least equally proper to say that the principal design of the statute was to protect parties from the performance of burdensome contracts which they never made. Therefore, if you may enforce an oral agreement for a substituted performance of a written agreement, you apply the statute to the shadow and withhold it from the substance. Such application of the statute only makes it necessary

that parties have a contract in writing. Then, under the guise of performance, the contract enforced is shown by parol." The section announces a general rule in respect to contracts in writing that is generally held by courts to be the rule in case of modification of contracts required to be in writing when no statute similar to section 3936 is in force.

[¶ 21] Constellation does not allege there was a written contract or an executed oral agreement to extend the payment terms of the September 2014 purchase agreement. Under N.D.C.C. § 9-09-06, a written contract cannot be altered "otherwise." The dictates of the statute cannot be avoided merely by cloaking the argument in estoppel language. Because a contract required by the statute of frauds to be in writing cannot be modified by a subsequent unexecuted oral agreement, we conclude the district court did not err in dismissing Constellation's equitable and promissory estoppel claims as a matter of law.

## IV

[¶ 22] It is unnecessary to address other arguments raised, because they are either unnecessary to the decision or are without merit. We affirm the judgment.

[¶ 23] GERALD W. VANDE WALLE, C.J., DONALD HAGER, D.J., DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 24] The Honorable DONALD HAGER, D.J., sitting in place of KAPSNER, J., disqualified.