2016 ND 84

**VALENTINA WILLISTON, LLC,**
**Plaintiff and Appellant,**

v.

**GADECO, LLC, Defendant**
**and Appellee.**

No. 20150180.

Supreme Court of North Dakota.

April 21, 2016.

Charles L. Neff (argued), Williston, N.D., for plaintiff and appellant.

Monte L. Rogneby (appeared) and Diane M. Wehrman (argued), Bismarck, N.D., defendant and appellee.

McEVERS, Justice.

[¶ 1] Valentina Williston, LLC, appeals from a district court's summary judgment dismissing its claims against Gadeco, LLC, with prejudice. Valentina Williston argues the district court erred, as a matter of law, in concluding the lease continued in full force and effect beyond the primary term, and erred in concluding the doctrine of promissory estoppel did not bar Gadeco from extending the primary term of its oil and gas lease, based on the terms set forth in a letter to Leroy and Norma Seaton by a Gadeco land manager. We affirm.

## I

[¶ 2] On May 4, 2007, Leroy and Norma Seaton entered into an oil and gas lease with Gadeco covering Sections 5, 6, 7, 8, and 18 in Township 154 North, Range 98 West, Williams County, North Dakota. The lease had a primary term of five years. The lease contained a "continuing operations clause," which enabled Gadeco to extend the primary term of the lease if "not more than ninety . . . days . . . elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well." The lease also contained a Pugh clause, the terms of which are not at issue. The Barney 18–1H well, spaced in Section 18, was spud and completed within the five-year primary term. The Gene 8–1H well, spaced in Sections 5 and 8, was spud within the primary term on August 31, 2011.

[¶ 3] On February 9, 2012, the Seatons entered into an oil and gas top lease with Valentina Exploration, LLC, covering Sections 5, 6, 7, and 8 in Township 154 North, Range 98 West, Williams County, North Dakota, sections already under contract by Gadeco's lease. A "top lease" is "a lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated." *Sandvick v. LaCrosse*, 2008 ND 77, ¶ 4, 747 N.W.2d 519 (quoting Howard R. Williams & Charles J. Meyers, *Manual of Oil and Gas Terms* 1285 (8th ed.1991)).

[¶ 4] On March 5, 2012, a Gadeco land manager mailed a letter to the Seatons, tendering a shut-in royalty payment, and stating, in pertinent part:

The oil and gas lease you have with us is currently held as follows;

T154N, R98W
Section 5: Lot 3
Section 8: NWNW
. . .

held by the Gene 8–1H well
drilled by Hess, spaced in Sections 5, 8

T154N, R98W
Section 18: NE, NESE
. . .

held by the Barney 18–1H well
drilled by Hess, spaced in Sections 7, 18

T154N, R98W
Section 6: ESE
Section 7: Lot 1, NENE, NENW, SENE, NWNE, NESE[,] SSE,
. . .

There are no wells on this acreage as yet

Pursuant to the terms of your Oil and Gas lease with us, dated May 4, 2007. . .this fulfills our obligation to drill a well and hold your lease acreage in Sections 5, 8, and 18 beyond its primary term. As indicated by the lease, we are tendering a payment of $230.02 which constitutes a shut-in royalty equal to $1.00 per net acre. In addition, per the terms of your lease with us, if no wells are spud prior to the lease expiration of May 4[,] 2012, then the acreage in Sections 6 and 7 will terminate.

[¶ 5] The Seatons did not immediately contact Gadeco in response to the land manager's letter. On May 4, 2012, Valentina Exploration hired Titan Resources, Inc., to perform a site inspection on Sections 6 and 7 to determine whether evidence of continuing drilling operations existed. The examiner reported, in part:

Examiner's report took place at around 8:30 am on May 4, 2012. Examiner inspected the Sections personally, as well as taking multiple photos to report the findings. Examiner could find no proof of "Operations" or "Drilling" on either of the Sections being reported above. . . . There is 1 well located in the pictures. This is the Barney 18–1H well which is located in the NENE of Section 18. The spacing on this particular well is Sections 18 and 19 of 154–98.

[¶ 6] On June 15, 2012, the Gene 8–1H well was completed forty-two days past the primary term. On June 28, 2012, the SC–Norma 154–98–0706H–1 well, spaced in Sections 6 and 7, was spud thirteen days after completion of the Gene 8–1H well, and fifty-five days after the primary term.

[¶ 7] On January 30, 2013, the Seatons' attorney mailed a certified letter to Gadeco demanding that it "sign and file a formal Release of Oil and Gas lease as to the Seaton lease acres in Sections 6 and 7, . . . pursuant to [N.D.C.C. § 47–16–36]." The letter alleged the lease had expired as to Sections 6 and 7 based on the terms of the lease, stating:

Due to the "unless" lease term provisions contained in the 2007 Gadeco, L.L.C. lease and the letter of March 5, 2012, the lease rights held by Gadeco, L.L.C. under the May 4, 2007 Seaton lease have expired as to the acreage in Section 6 and 7 terminated as of May 4, 2012.

Further, it appears there was no production to the surface from your Gene 8–1 H Well sufficient to meet your continuous operations clause in your old lease.

The letter indicated that failure to execute a release would result in a lawsuit for declaratory relief and quiet title. Gadeco did not respond to the demand letter.

[¶ 8] On May 10, 2013, Valentina Exploration recorded and assigned its top lease to Valentina Williston, its wholly-owned subsidiary, to litigate the dispute. The Seatons entered into a litigation agreement with Valentina Williston in which the Seatons agreed to Valentina Williston acting "as the agent and Lessee of Seaton," in the impending litigation.

[¶ 9] Valentina Williston sued for declaratory judgment and to quiet title. Valentina Williston moved for partial summary judgment arguing the lease had terminated, as a matter of law, due to the effect of the land manager's letter. Gadeco filed a cross-motion for summary judgment asking the district court to dismiss Valentina Williston's claims and conclude the lease continued in full force and effect beyond the primary term due to continuing drilling operations. At the hearing, Valentina Williston argued, among other things, that the land manager's letter invoked the "doctrine of estoppel," based on representations contained in the letter regarding Gadeco's lease terminating if no wells were spud by May 4, 2012. After the hearing on the motions, the district court granted Gadeco's motion for summary judgment in part, and determined that Gadeco's lease "continued in full force and effect into the [secondary] term, because not more than ninety (90) days elapsed between the completion or abandonment of one well and the beginning of operations for the next well." The district court ordered additional briefing on the estoppel theory, stating: "But for the

[land manager's letter] this case would be done. While the letter was discussed briefly by the parties at oral arguments, it was hardly the focus.... It will now most likely be dispositive of this case."

[¶ 10] After the parties submitted additional briefing, the district court determined, without any substantive analysis, the estoppel theory was not applicable. The district court granted Gadeco's motion for summary judgment and dismissed Valentina Williston's claims with prejudice. Valentina Williston appeals from the district court's summary judgment in favor of Gadeco.

## II

[¶ 11] Our standard for reviewing a summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Lario Oil & Gas Co. v. EOG Resources, Inc.*, 2013 ND 98, ¶ 5, 832 N.W.2d 49 (quoting *Brigham Oil and Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, ¶ 13,

801 N.W.2d 677). "Unsupported conclusory allegations are insufficient to withstand summary judgment." *University Hotel Development v. Dusterhoft Oil, Inc.*, 2006 ND 121, ¶ 14, 715 N.W.2d 153. "The party resisting a summary judgment motion must present sufficient evidence that would allow a reasonable jury to find for that party." *Id.* Here, the parties filed cross-motions for summary judgment, and no genuine issues of fact exist.

## III

[¶ 12] Valentina Williston argues the district court erred in granting Gadeco's motion for summary judgment dismissing its claims with prejudice. Valentina Williston does not dispute the terms of the lease or argue on appeal that Gadeco did not participate in drilling operations that would have saved the lease on the disputed sections. Rather, Valentina Williston argues the land manager's representation made in the letter precludes summary judgment in favor of Gadeco, and the district court erred, as a matter of law, by not concluding the statements in the land manager's letter bound Gadeco and established an intent to modify the initial lease agreement and terminate the lease as to Sections 6 and 7 if no well was spud by May 4, 2012.

[¶ 13] "The same general rules that govern interpretation of contractual agreements apply to oil and gas leases." *Irish Oil & Gas, Inc. v. Riemer*, 2011 ND 22, ¶ 11, 794 N.W.2d 715 (quoting *Egeland v. Continental Resources, Inc.*, 2000 ND 169, ¶ 10, 616 N.W.2d 861). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of [N.D.C.C. ch. 9–07]." N.D.C.C. § 9–07–04; *Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 9, 788 N.W.2d 312.

[¶ 14] The lease contains a specific provision governing the lessee's responsibilities if it wishes to surrender all or part of the lease:

> Lessee may at any time or times during or after the primary term surrender this lease as to all or any portion of said land and as to any strata or stratum by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligations thereafter accruing as to the acreage surrendered.

The letter at issue here does not meet the requirements to surrender Sections 6 and 7, because no release was delivered or filed. The Seatons would not have demanded Gadeco sign and file a formal release if their belief was that the lease had already been surrendered. Even if this contract provision does not apply to the land manager's letter, the lease provides no specific provision on how the parties may otherwise modify its terms so we look to N.D.C.C. § 9–09–06. Section 9–09–06, N.D.C.C., provides:

> A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which that party was not obligated by the original contract to incur.

[¶ 15] Valentina Williston does not allege the lease was modified by an executed oral agreement. Rather, Valentina Williston claims that the land manager's letter modified the Gadeco lease, precluding summary judgment in Gadeco's favor. Therefore, Valentina Williston must establish that, under N.D.C.C. § 9–09–06, the land manager's letter is a written contract that modifies the terms of the lease.

[¶ 16] We explained the elements for a valid contract in *Lund v. Lund*:

> A valid contract requires parties capable of contracting, consent, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02. The parties' consent must be free, mutual, and communicated to each other. N.D.C.C. § 9–03–01. Under N.D.C.C. § 9–03–16, consent is not mutual unless the parties all agree upon the same thing in the same sense. Consideration is "any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not entitled lawfully, or any prejudice suffered or agreed to be suffered by such person, other than such as that person, at the time of consent, is lawfully bound to suffer as an inducement to the promisor." N.D.C.C. § 9–05–01.

2014 ND 133, ¶ 10, 848 N.W.2d 266. "To be valid and enforceable, ... a contract must be reasonably definite and certain in its terms so that a court may require it to be performed." *Lagerquist v. Stergo*, 2008 ND 138, ¶ 15, 752 N.W.2d 168 (emphasis omitted).

[¶ 17] "A contract requires an offer, an acceptance of an offer, and a mutual acceptance and understanding between the offeror and the offeree as to the terms of the obligation." *Cooke v. Blood Systems, Inc.*, 320 N.W.2d 124, 128 (N.D. 1982). An offer is "a statement by the offeror of what he or she will give in return for some promise or act of the offeree." 17A Am. Jur. 2d *Contracts* § 47 (2004). "A mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer, and a letter intended merely as preliminary negotiation should not be construed as an offer." 17A Am. Jur. 2d, *supra* § 47. "The primary test of an offer is whether it induces a reasonable belief in the recipient that he or she can,

*by accepting*, bind the sender." 17A Am. Jur. 2d, *supra* § 49 (emphasis added).

[¶ 18] In the letter, the land manager summarized drilling activity on land subject to the lease and thereafter stated:

> *Pursuant to the terms* of your Oil and Gas lease with us ... this fulfills our obligation to drill a well and hold your lease acreage in Sections 5, 8, and 18 beyond its primary term. *As indicated by the lease*, we are tendering a payment of $230.02 which constitutes a shut-in royalty equal to $1.00 per net acre. In addition, *per the terms of your lease* with us, if no wells are spud prior to the lease expiration of May 4[,] 2012, then the acreage in Sections 6 and 7 will terminate. (Emphasis added).

[¶ 19] As a matter of law, the land manager's letter does not establish a written agreement to modify Gadeco's rights under the lease. The land manager appeared to summarize, albeit inaccurately, the terms of the existing lease, evidenced by multiple references to the existing lease as emphasized above. While Valentina Williston contends that the land manager's statement in the letter, "if no wells are spud prior to the lease expiration of May 4[,] 2012, then the acreage in Sections 6 and 7 will terminate," modifies Gadeco's rights under the lease, the letter contains no offer and does not propose any benefit that the Seatons would confer onto Gadeco in exchange for Gadeco to modify its rights under the lease. The letter also does not propose any detriment the Seatons would suffer in exchange for Gadeco to modify its rights under the lease.

[¶ 20] Even if the letter did contain an offer, Valentina Williston failed to establish the Seatons accepted the purported offer. "It is a general rule of law that silence and inaction, or mere silence or failure to reject an offer when it is made, do not constitute an acceptance of the offer."

*B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 2007 ND 12, ¶ 13, 727 N.W.2d 270 (quoting 17A Am. Jur. 2d *Contracts* § 103 (1991)). The Seatons did not sign the purported offer or otherwise communicate acceptance of the purported offer; rather, the first response was a written demand for a release more than six months after receiving the land manager's letter.

[¶ 21] The land manager's letter does not constitute a written contract required to modify the lease under N.D.C.C. § 9-09-06, because it does not contain the elements for a valid contract.

## IV

[¶ 22] Valentina Williston argues that the land manager, as Gadeco's agent, waived or abandoned Gadeco's rights under the lease as to Sections 6 and 7 because, as indicated by the letter, no well was spud by May 4, 2012.

[¶ 23] While this issue may be similar to the argument raised on termination of the lease, Valentina Williston did not raise the issues of waiver or abandonment in its motion for summary judgment and supporting brief nor did it make this argument at the hearing before the district court or in its supplemental post-hearing brief. This Court has repeatedly stated that we generally do not consider issues or arguments for the first time on appeal:

> "The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories. The requirement that a party first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision. It is funda-

mentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Accordingly, issues or contentions not raised ... in the district court cannot be raised for the first time on appeal."

*Working Capital # 1 v. Quality Auto. Body, Inc.*, 2012 ND 115, ¶ 13, 817 N.W.2d 346 (quoting *Paulson v. Paulson*, 2011 ND 159, ¶ 9, 801 N.W.2d 746). Therefore, we will not consider Valentina Williston's waiver and abandonment arguments for the first time on appeal.

## V

[¶ 24] Valentina Williston also argues the district court erred by concluding the doctrine of promissory estoppel was inapplicable. Valentina Williston asserts promissory estoppel bars Gadeco from extending the lease's primary term because the land manager's statement was a promise by Gadeco to terminate the lease if no wells were spud by May 4, 2012. Gadeco argues the land manager's letter did not contain a promise, but merely inaccurately summarized the terms under the existing lease. Gadeco also argues that any representations made in the land manager's letter were made to the Seatons, and they are not a party to this action.

[¶ 25] In *Dusterhoft Oil, Inc.*, we articulated the elements that must be established to invoke promissory estoppel:

Before the doctrine of promissory estoppel can be invoked, four elements must be established: "1) a promise which the promisor should reasonably expect will cause the promisee to change his position; 2) a substantial change of the promisee's position through action, or forbearance; 3) justifiable reliance on the promise; and 4) injustice which can only be avoided by enforcing the promise."

2006 ND 121, ¶ 11, 715 N.W.2d 153 (quoting *Russell v. Bank of Kirkwood Plaza*, 386 N.W.2d 892, 896 (N.D.1986)). "The promise must 'be clear, definite, and unambiguous as to essential terms before the doctrine of promissory estoppel may be invoked to enforce an agreement or to award damages for the breach thereof.' " *Dusterhoft Oil, Inc.*, 2006 ND 121, ¶ 11, 715 N.W.2d 153 (quoting *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 357 (N.D. 1986)). A promise is too indefinite for reasonable enforcement when a party retains the right to determine the extent of his performance. *Lohse*, 389 N.W.2d at 355 (citations omitted).

[¶ 26] As we have already concluded, the land manager's letter to the Seatons did not contain an offer to modify Gadeco's rights under the lease. Likewise, the letter does not contain a clear, definite, and unambiguous promise to terminate its rights on May 4, 2012, if no wells were spud. The letter informed the Seatons *"per the terms of your lease with us, if no wells are spud prior to the lease expiration* of May 4[,] 2012, then the acreage in Sections 6 and 7 will terminate." (Emphasis added). The letter is an incorrect summary of the terms, as the lease contained a continuing drilling operations clause that extended the primary term by continuing drilling operations at least ninety days beyond May 4, 2012. The land manager's letter also incorrectly indicated that the Barney 18–1H well is spaced in Section 18 and Section 7 while, at the same time indicating "[t]here are no wells on [Section 7] as yet." Any purported promise in the letter contains irreconcilable ambiguities. In addition, Gadeco retained the right to determine the extent of performance of whether to spud a well. Therefore, Valentina Williston failed to meet the requirements of the first element of promissory estoppel and the doctrine is inapplicable.

*See Cooke,* 320 N.W.2d at 129 ("[T]he doctrine of promissory estoppel is inapplicable because it requires there be a promise or agreement and, as we have previously stated, the facts and circumstances of this case do not reflect that there was a promise or agreement between [the parties].").

[¶ 27] It is unnecessary to address whether Valentina Williston, as a third party, may enforce a promise, because no promise exists. *See Dusterhoft Oil,* 2006 ND 121, ¶ 18, 715 N.W.2d 153.

## VI

[¶ 28] We decline to address Valentina Williston's remaining arguments because they are unnecessary to our decision. We affirm the district court's summary judg-ment in favor of Gadeco and dismissing Valentina Williston's claims against Gadeco with prejudice.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

[¶ 30] The Honorable MARY MUEHLEN MARING, S.J., sitting in place of KAPSNER, J., disqualified.