Crothers, Justice.
 

 [¶ 1] Cameron and Mary Susan Arnegard appeal from a judgment relating to a conditional use permit (CUP) obtained from Arnegard Township in McKenzie County. The Arnegards argue the district court erred in granting the Township's motion in limine to exclude a buy-sell agreement; denying their motion to amend their complaint on a due process claim; granting summary judgment dismissing their breach of contract, actual fraud and equitable estoppel claims; dismissing their negligence and deceit claims by directed verdict; and determining no party prevailed in the action. The Arnegards also argue the district court abused its discretion by denying their motion to amend their complaint at trial. The Township cross-appeals, arguing the district court erred in granting judgment as a matter of law in favor of the Arnegards' due process claim. We affirm the judgment in part, reverse the judgment in part and remand.
 

 I
 

 [¶ 2] On January 5, 2012 the Township established zoning ordinances, including a provision for conditional use permits. The ordinances limited conditional uses in agricultural-zoned property: one non-farm dwelling per forty acres; schools; oil, gas, mineral, and gravel exploration and production; water well drilling, animal feeding operations; radio and television towers; utilities; parks; animal hospitals; fire stations; grain cleaning plants; and stockyards. The ordinances prohibited any conditional use not specifically listed. The Township clerk filed copies of the zoning ordinances with the State and the County Auditor.
 

 [¶ 3] On March 20, 2012 the Township amended the zoning ordinances, allowing applications for conditional use permits to build temporary workforce housing ("man camps") in agricultural-zoned areas:
 

 "The Planning and Zoning Commission shall establish standards for Temporary Workforce Housing and may make additional requirements above and beyond those standards when conditional use permits are issued.
 

 "Conditional use permits for Temporary Workforce Housing are valid for one year, and may be renewed at discretion
 
 *744
 
 of the Planning and Zoning Commission.
 

 "Conditional use permit fee for Temporary Workforce Housing shall be $2000 per year, and said fee may be revised at any time without notice."
 

 The Township published notice in advance of the March meeting via the McKenzie County Farmer newspaper and by postings at Arnegard City Hall and City of Arnegard's post office. The text of the March amendment was not published, but the Township clerk retained copies. The January ordinances, without the March amendments, were posted to the McKenzie County website. The Township's zoning commission adopted extensive development standards pursuant to the March amendments. The development standards were not directly amended into the zoning ordinances and did not mention the one-year automatic expiration of a CUP.
 

 [¶ 4] The Arnegards own property within the agricultural zone of the Township. Following negotiations with Morgan Chase Management, the Arnegards applied for and received a CUP to construct man camps on their property. The CUP itself did not mention a one-year expiration date. The Arnegards received a copy of the zoning commission's development standards, but claim they did not know about the March amendments. The Township Clerk filed the January ordinances and the March amendments with the State and the County Auditor. No one else requested or received copies of the ordinances or amendments.
 

 [¶ 5] Throughout 2013 the Township addressed the Arnegards' property at four meetings but did not notify them about the CUP's automatic expiration. In May 2013 the Township transferred its zoning authority to McKenzie County by a joint powers agreement. In July 2013 the Arnegards' development partner changed from Morgan Chase to Laramie Dawson. The Arnegards' CUP expired by process of law in September 2013, although the Township voted not to renew the CUP in November 2013. In December 2013 the Township clerk notified the Arnegards of the expiration. The Arnegards served a complaint and demand for jury trial on the Township in March 2014 and filed with the district court on January 12, 2016. The district court ordered a multi-day jury trial to start September 20, 2016.
 

 [¶ 6] The Township moved for summary judgment in March 2016, arguing the district court lacked jurisdiction to hear the case because the Arnegards failed to file an administrative appeal under N.D.C.C. § 28-34-01 and the Township was immune under N.D.C.C. § 32-12.1-03. The Arnegards responded, asserting the Township deprived them of due process by not providing notice of the amendments as required under N.D.C.C. § 58-03-10 for township bylaws. In June 2016 the district court denied the Township's motion, finding genuine issues of material fact precluded summary judgment.
 

 [¶ 7] At a pretrial conference on September 20, 2016, before empaneling the jury, the district court dismissed the Arnegards' breach of contract, actual fraud, and equitable estoppel claims for lack of authority showing a CUP could be a contract. The Township moved for a directed verdict on the remaining deceit, negligence, and due process violation claims after the Arnegards presented their case. The district court granted a directed verdict in favor of the Township on the deceit claim for lack of evidence and on the negligence claim for lack of causation. The Arnegards moved to amend their complaint to include a claim for due process violations under
 
 42 U.S.C. § 1983
 
 . The district court denied their motion to amend. The district court granted a directed verdict in favor of the Arnegards
 
 *745
 
 for the due process violation under the North Dakota Const., art. 1, § 12, citing
 
 Carey v. Piphus
 
 ,
 
 435 U.S. 247
 
 , 266,
 
 98 S.Ct. 1042
 
 ,
 
 55 L.Ed.2d 252
 
 (1978). Having dispensed with the Arnegards' claims, the district court did not submit any issues to the jury.
 

 [¶ 8] The district court awarded the Arnegards damages of $1.00. After post-trial briefing, the district court ruled no party prevailed in the action for awarding costs under N.D.C.C. § 28-26-06 because "both parties prevailed in some way, and therefore there is [sic] no prevailing parties." Judgment was entered on April 25, 2017.
 

 [¶ 9] The Arnegards appeal from the judgment. The Township cross-appeals.
 

 II
 

 [¶ 10] The Arnegards' claims ultimately arise from the validity and application of the Township's zoning regulations. We must first determine whether the Township validly enacted the zoning regulations and amendments in January and March 2012. Second, we must interpret the ordinance to determine whether the Township granted a valid CUP and whether the CUP expired as a function of law after one year.
 

 A
 

 [¶ 11] Our standard of review for statutory interpretation is well-established.
 

 "Statutory interpretation is a question of law, which is fully reviewable on appeal. The primary purpose of statutory interpretation is to determine the intention of the legislation. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. If the language of a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.' "
 

 Zajac v. Traill Cty. Water Res. Dist.
 
 ,
 
 2016 ND 134
 
 , ¶ 6,
 
 881 N.W.2d 666
 
 (citations omitted).
 

 [¶ 12] Section 58-03-13, N.D.C.C., governs whether the Township validly enacted zoning regulations:
 

 "The board or boards of township supervisors may establish, and from time to time change, the boundaries of township zoning districts and establish, amend, supplement, and enforce regulations and restrictions in the districts.
 
 No regulation, restriction, or boundaries become effective until after a public hearing at which parties in interest and citizens have an opportunity to be heard.
 
 At least fifteen days' notice of the time and place of the hearing must be published in the official newspaper of the county and also in the official newspaper of the municipality in relation to which the zoning action is taken, if in the municipality an official newspaper other than the official newspaper of the county is published.
 
 The description of any land within any zoning district established by a zoning commission together with any regulations and restrictions established must be filed with the governing bodies of the township and municipalities concerned, and if amendments are made to the boundaries of the zoning district or the regulations or restrictions, the amendments must be filed in the same manner
 
 ."
 

 (Emphasis added.) The notice and filing requirements of § 58-03-13 are mandatory, and failure to follow the procedures by a township renders a purported zoning ordinance void.
 
 Homer Twp. v. Zimney
 
 ,
 
 490 N.W.2d 256
 
 , 259 (N.D. 1992).
 

 [¶ 13] Here, the Township followed statutory procedure by publishing notices
 
 *746
 
 for both the January regulations and the March 2012 amendments in the official County newspaper, the McKenzie County Farmer. The Township also posted notices for both matters in Arnegard City Hall and the City of Arnegard's post office. The Township held public hearings for both matters, and the parties do not dispute that citizens of the Township were afforded the opportunity to be heard. The Township Clerk retained copies of the January regulations and March amendments, and filed copies of the January regulations with the State and the County Auditor. Section 58-03-13, N.D.C.C., requires a public hearing, notice of the hearing published at least fifteen days prior, and filing zoning ordinances and any subsequent amendments with the governing bodies of the township and municipality concerned. The Township fulfilled these requirements and validly enacted both the January zoning ordinances and March 2012 amendments.
 

 B
 

 [¶ 14] Ordinances are interpreted and reviewed in the same manner as statutes.
 

 "We interpret ordinances as we would any statute.
 
 GO Committee v. City of Minot
 
 ,
 
 2005 ND 136
 
 , ¶ 9,
 
 701 N.W.2d 865
 
 (citations omitted). Ordinance interpretation, like statutory interpretation, is a question of law subject to full review upon appeal.
 

 Id.
 

 (citation omitted).... 'We construe statutes as a whole and harmonize them to give meaning to related provisions.' "
 

 Hentz v. Elma Twp. Bd. of Supervisors
 
 ,
 
 2007 ND 19
 
 , ¶ 9,
 
 727 N.W.2d 276
 
 (citations omitted) (emphasis added).
 

 [¶ 15] The January 2012 zoning ordinances provided guidelines for CUP applications, limitations and procedures: "Conditional use permits shall be subject to review, and may be canceled according to the terms specified in the permit. The permit, if not utilized within the prescribed time frame, shall expire automatically as specified in the permit." After listing a number of permitted uses in the "Agricultural" zone, the January ordinances contained a prohibition clause: "Any land uses which are not listed in this Section as a permitted use or as a conditionally permitted use shall be considered a prohibited use and shall not be allowed in this zoning district." The January ordinances do not list man camps or a similar conditionally permitted use.
 

 [¶ 16] The March 2012 amendments allowed man-camp CUPs with a crucial limitation: "Conditional use permits for Temporary Workforce Housing are valid for one year, and may be renewed at discretion of the Planning and Zoning Commission." The plain wording of the January regulations would invalidate any CUP for man camps as a prohibited use. The plain wording of the March amendments allows for man-camp CUPs subject to a one-year limitation. Thus, any man-camp CUP obtained from the Township during the permit period from March 2012 through May 2013, when the Township transferred zoning authority to McKenzie County, was subject to the one-year automatic expiration.
 

 [¶ 17] The Arnegards obtained a CUP from the Township on September 18, 2012, after two meetings with the Township. This CUP expired as a function of law one year later. Because the one-year expiration and allowance for man-camp CUPs were written into the zoning regulations as part of the same March 2012 amendments, they must function together.
 
 See
 

 Pulkrabek v. Morton Cty.
 
 ,
 
 389 N.W.2d 609
 
 , 611 (N.D. 1986) ("It is well established that a party may not seek the benefit or application of a law and, in the same proceeding, attack its validity.")
 

 *747
 
 III
 

 [¶ 18] The Arnegards claim the CUP was a contract. They argue the district court erred by finding no evidence of a contract and granting summary judgment dismissing their claims for breach of contract, actual fraud and equitable estoppel.
 

 "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."
 

 Poppe v. Stockert
 
 ,
 
 2015 ND 252
 
 , ¶ 4,
 
 870 N.W.2d 187
 
 ,
 
 reh'g denied
 
 , Dec. 1, 2015 (citation and quotation marks omitted).
 

 A
 

 [¶ 19] The Arnegards claim that no authority in North Dakota affirmatively states a CUP is
 
 not
 
 a contract. The presence of a contract is a prerequisite for breach and actual fraud claims.
 
 See
 
 N.D.C.C. §§ 9-01-16 (defining requirements for contract enforcement), 9-03-08 (defining actual fraud). Conditional use permits are ministerial, administrative or discretionary procedures of governments relating to land use. 8 McQuillin
 
 Municipal Corporations
 
 § 25:179.15 (3d ed. 2017 update).
 

 "A conditional use is a use which is permitted within the zone, but which because of the possibility that the permitted use could become incompatible in certain respects with other uses within the zone, special permission is required before the land may be put to that use.
 
 See
 

 County of Imperial v. McDougal
 
 ,
 
 19 Cal.3d 505
 
 ,
 
 138 Cal.Rptr. 472
 
 ,
 
 564 P.2d 14
 
 , [17] (1977). We conclude that the issuance of a conditional use permit creates no greater right in property owners than they would have possessed had they desired to develop in conformance with any other use permitted within the zone. Such a permit only represents a determination that as to their land, a use additional to those generally permitted will be allowed.
 

 "Uses permitted by a particular zoning classification are not vested rights...."
 

 Elam v. Albers
 
 ,
 
 44 Colo.App. 281
 
 ,
 
 616 P.2d 168
 
 , 169 (1980) ;
 
 see also
 

 County of Imperial v. McDougal
 
 ,
 
 19 Cal.3d 505
 
 ,
 
 138 Cal.Rptr. 472
 
 ,
 
 564 P.2d 14
 
 , 17 (1977) (en banc) ("[A] conditional use permit, unlike a nonconforming use, allows a use permitted rather than proscribed by the zoning regulations but because of the possibility that the permitted use could be incompatible in some respects with the applicable zoning, a special permit is required.").
 

 [¶ 20] Here, the district court found no authority interpreting CUPs under contract principles and ruled the breach and actual fraud claims fail without a contract. We agree. Because a CUP is
 
 *748
 
 issued under zoning ordinances, an issuing body is not free to give its consent in the required sense of a contract.
 
 See
 

 Valentina Williston, LLC v. Gadeco, LLC
 
 ,
 
 2016 ND 84
 
 , ¶ 16,
 
 878 N.W.2d 397
 
 ("The parties' consent must be free, mutual, and communicated to each other.");
 
 see also
 
 N.D.C.C. §§ 9-01-02, 9-03-01. The district court did not err by dismissing the Arnegards' breach of contract and actual fraud claims.
 

 B
 

 [¶ 21] The Arnegards argue the district court incorrectly dismissed their claim for equitable estoppel based on the lack of a contract.
 

 "To establish equitable estoppel, a plaintiff must show, on the part of the defendant:
 

 '(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the [defendant] subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the [plaintiff]; and (3) knowledge, actual or constructive, of the real facts.'
 

 "The plaintiff also must show, on her own part:
 

 '(1) [L]ack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the [defendant]; and (3) action or inaction based thereon, of such a character as to change the position or status of the [plaintiff], to his injury, detriment, or prejudice.'
 

 "The plaintiff's reliance on the defendant's conduct must be reasonable."
 

 Matter of Helling
 
 ,
 
 510 N.W.2d 595
 
 , 597 (N.D. 1994) ;
 
 see also
 
 N.D.C.C. § 31-11-06 (codifying equitable estoppel).
 

 [¶ 22] Equitable estoppel may function to prevent revocation of a validly issued permit if the permittee can show substantial reliance.
 

 "A substantial change of position in reliance on a permit entitles the permittee to continue and complete the use authorized by the permit, irrespective of subsequent enactments or amendments of the zoning laws. ...
 

 "In some cases, the protection of the permit is said to be based on an estoppel of the municipality or its officials.
 

 "A permit is not protected, however, against revocation by subsequent zoning legislation where changes of position, expenditures or incurrence of obligations under the permit have been minor, minimal, or relatively insignificant. The issue may depend sometimes upon whether actual development has begun or whether the land was physically used for the development contemplated, and not only whether money has been spent in preparation to develop the property. ... The test of substantiality of expenditure in this connection is to be determined by an assessment of the proportion which the expenditure bears to the total expenditure which would be required to complete the proposed improvement."
 

 8 McQuillin
 
 Municipal Corporations
 
 , § 25:179.26 (3d ed. 2017 update) (footnotes omitted). In
 
 Buegel v. City of Grand Forks
 
 , this Court held a conditional use permittee could receive damages for expenditures actually incurred in reliance on the City's ordinances where the City amended its regulations during the term of a CUP.
 
 475 N.W.2d 133
 
 , 136 (N.D. 1991).
 

 " '[A] landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed
 
 *749
 
 himself to his substantial disadvantage before the zoning change may be protected [by inverse condemnation].'
 
 City of Fargo v. Harwood Twp.
 
 ,
 
 256 N.W.2d 694
 
 , 700 (N.D. 1977).... We agree that the 'substantial reliance' exception is essentially an exception grounded in the doctrine of estoppel."
 

 Id.
 
 at 135.
 

 "[E]stoppel against the government is not absolutely barred as a matter of law.... It is a doctrine which must be applied on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is
 
 not
 
 applied versus the public interest at stake and the resulting harm to that interest if the doctrine
 
 is
 
 applied."
 

 Blocker Drilling Can., Ltd. v. Conrad
 
 ,
 
 354 N.W.2d 912
 
 , 920 (N.D. 1984) (emphasis in original).
 

 [¶ 23] Here, the district court dismissed the Arnegards' claim based on the lack of a contract. The Arnegards did not present evidence of substantial expenditure, but claimed only lost opportunity or diminution in value. Their claim arose from alleged lost opportunities based on development or sale negotiations, which they admit never amounted to a final agreement. While dismissal of an equitable estoppel claim for lack of an underlying contract was a misapplication of the law, on de novo review we conclude the Arnegards' claim was properly dismissed because they did not claim or show substantial reliance sufficient to invoke the protection of estoppel.
 
 See
 

 Buegel
 
 ,
 
 475 N.W.2d 133
 
 , 136 (N.D. 1991) ;
 
 City of Fargo v. Harwood Twp.
 
 ,
 
 256 N.W.2d 694
 
 , 700 (N.D. 1977) (ruling landowner with mere "hopes or plans" to use property in a certain way in the future does not have protection of substantial reliance).
 

 IV
 

 [¶ 24] The Arnegards argue the district court erred by granting directed verdicts in favor of the Township on their negligence and deceit claims. "The standard for determining whether judgment as a matter of law should be granted is the same as that for a directed verdict or judgment notwithstanding the verdict."
 
 Wagner v. Squibb
 
 ,
 
 2003 ND 18
 
 , ¶ 4,
 
 656 N.W.2d 674
 
 .
 

 "The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal."
 

 Symington v. Mayo
 
 ,
 
 1999 ND 48
 
 , ¶ 4,
 
 590 N.W.2d 450
 
 (citations omitted). Rule 50(a), N.D.R.Civ.P., provides:
 

 "(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
 

 (A) resolve the issue against the party; and
 
 *750
 
 (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
 

 "(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the moving party to the judgment."
 

 A
 

 [¶ 25] The Arnegards argue the Township had a duty to disclose the March 2012 amendments and failure to disclose was negligence.
 

 "Negligence and proximate cause are fact questions unless the evidence is such that reasonable minds can draw but one conclusion ....
 

 ....
 

 "Actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of duty. A proximate cause is a cause that, as a natural and continuous sequence unbroken by any controlling intervening cause, produces the injury, and without it the injury would not have occurred."
 

 Miller v. Diamond Res., Inc.
 
 ,
 
 2005 ND 150
 
 , ¶ ¶ 8-10,
 
 703 N.W.2d 316
 
 . "Whether a duty exists is generally a preliminary question of law for the court."
 
 Groleau v. Bjornson Oil Co., Inc.
 
 ,
 
 2004 ND 55
 
 , ¶ 6,
 
 676 N.W.2d 763
 
 .
 

 "Generally, every person is charged with knowledge of the provisions of statutes and must take notice thereof. The concept that ignorance of the law is no excuse has been firmly embedded in our legal proceedings. This principle and concept applies in criminal cases and we see no valid reason why the same should not apply to civil matters. Continuing in the same vein 'neither ignorance of the ordinance ... or regulation ... is a valid defense.' "
 

 Lumpkin v. Streifel
 
 ,
 
 308 N.W.2d 878
 
 , 880 (N.D. 1981) (citations omitted);
 
 see
 

 Hellebust v. Bonde
 
 ,
 
 172 N.W. 812
 
 , 813,
 
 42 N.D. 324
 
 , 328 (1919) ("both parties are presumed to know the law, or at least 'ignorantia legis neminem excusat' ").
 

 [¶ 26] Here, the Township published notice of a public hearing relating to the March 2012 amendments under N.D.C.C. § 58-03-13 and appropriately filed copies after adopting the amendments. These acts constitute the extent of the statutory duty imposed upon the Township. The Township had no duty to disclose validly enacted amendments to affected landowners; rather, landowners generally are charged with knowledge of the law.
 
 See
 

 Lumpkin
 
 ,
 
 308 N.W.2d 878
 
 , 880 (N.D. 1981). Moreover, any failure to follow statutory procedures in enacting zoning ordinances or amendments leads to voiding the defective laws rather than giving rise to a tort claim and the opportunity to recover damages.
 
 See
 

 Homer Twp. v. Zimney
 
 ,
 
 490 N.W.2d 256
 
 , 259 (N.D. 1992) ;
 
 see also
 
 N.D.C.C. § 32-12.1-03(3)(b) ("A political subdivision ... may not be held liable under this chapter for ... the decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve."). The district court did not err by granting directed verdict in favor of the Township on the Arnegards' negligence claim.
 

 B
 

 [¶ 27] The Arnegards argue the district court erred by not submitting
 
 *751
 
 the factual issues of deceit to the jury. In relevant part, N.D.C.C. § 9-10-02(3) defines deceit as "The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." "One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers." N.D.C.C. § 9-10-03. "[D]eceit require[s] misrepresentation of facts, suppression of facts, misleading another, or promising without intending to perform."
 
 Schneider v. Schaaf
 
 ,
 
 1999 ND 235
 
 , ¶ 16,
 
 603 N.W.2d 869
 
 .
 

 "[O]ur Code, in laying down the elements of an action to recover damages for deceit ... bases the action upon misrepresentation or suppression of facts or upon a promise made without any intention of performing it; and thus, by excluding misrepresentations of law, impliedly, at least, enacts the rule that such misrepresentations do not give rise to an action for deceit."
 

 Hellebust
 
 ,
 
 172 N.W. at 813
 
 ,
 
 42 N.D. at 328
 
 (1919) ;
 
 see
 

 Nodak Oil Co. v. Mobil Oil Corp.
 
 ,
 
 533 F.2d 401
 
 , 406 (8th Cir. 1976) ("The district court was correct in its statement of the general rule that a misrepresentation of law is not actionable fraud in tort.").
 

 [¶ 28] Here, the district court directed the verdict in favor of the Township because it found no evidence of deceit. The Arnegards' factual claims include failure to disclose the one-year expiration in the language of the CUP and failure to inform the Arnegards at multiple meetings about the expiration. As with the negligence claim, the Arnegards are charged with knowledge of statutes and ordinances. We conclude that a claim for deceit based on misrepresentation of law is barred as a matter of law.
 
 Hellebust
 
 ,
 
 172 N.W. at 813
 
 ,
 
 42 N.D. at 328
 
 (1919). Thus, a directed verdict in favor of the Township was properly granted.
 

 V
 

 [¶ 29] The Arnegards claim the Township's lack of notice resulted in a constitutional due process violation by which they were deprived of a valuable property right in the form of the conditional use permit.
 

 "The state and federal constitutions provide the State may not deprive any person of life, liberty or property without due process of law.
 
 See
 
 U.S. Const. amend. XIV, § 1 ; N.D. Const. art. I, § 12. 'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." '
 
 In re N.A.
 
 ,
 
 2016 ND 91
 
 , ¶ 10,
 
 879 N.W.2d 82
 
 (quoting
 
 Mathews v. Eldridge
 
 ,
 
 424 U.S. 319
 
 , 333 [
 
 96 S.Ct. 893
 
 ,
 
 47 L.Ed.2d 18
 
 ] (1976) ). The first inquiry in every due process challenge is to determine whether the plaintiff has been deprived of a 'property' or 'liberty' interest.
 
 American Mfrs. Mut. Ins. Co. v. Sullivan
 
 ,
 
 526 U.S. 40
 
 , 59 [
 
 119 S.Ct. 977
 
 ,
 
 143 L.Ed.2d 130
 
 ] (1999). 'Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.'
 

 Id.
 

 ;
 
 see also
 

 Wilkinson v. Austin
 
 ,
 
 545 U.S. 209
 
 , 224-25 [
 
 125 S.Ct. 2384
 
 ,
 
 162 L.Ed.2d 174
 
 ] (2005) (stating the three-prong test from
 
 Mathews v. Eldridge
 
 applies once a protected liberty or property interest has been established)."
 

 Coon v. N.D. Dep't of Health
 
 ,
 
 2017 ND 215
 
 , ¶ 28,
 
 901 N.W.2d 718
 
 ,
 
 reh'g denied
 
 , Sept. 29, 2017. "[L]egislative determination provides all the process that is due."
 

 *752
 

 Logan v. Zimmerman Brush Co.
 
 ,
 
 455 U.S. 422
 
 , 433,
 
 102 S.Ct. 1148
 
 ,
 
 71 L.Ed.2d 265
 
 (1982).
 

 [¶ 30] As a threshold issue we must determine whether a protected property interest exists. "The hallmark of a property right is an individual entitlement, grounded in state law, which cannot be removed except for cause."
 
 Ennis v. Williams Cty. Bd. of Comm'rs
 
 ,
 
 493 N.W.2d 675
 
 , 678 (N.D. 1992) (citing
 
 Logan v. Zimmerman Brush Co.
 
 ,
 
 455 U.S. 422
 
 , 430,
 
 102 S.Ct. 1148
 
 ,
 
 71 L.Ed.2d 265
 
 (1982) ). A permit does not create a protected property interest in and of itself without substantial reliance:
 

 "[T]he issuance of a permit or license, in the absence of substantial detrimental reliance, does not create an unconditional right. ... [A] landowner who merely plans to use his property in a certain way at some time in the future has no protection against zoning changes prohibiting that use, but a landowner who has made substantial expenditures in reliance upon existing zoning, or otherwise committed himself to his substantial disadvantage before the zoning changes[,] may be protected."
 

 Hagerott v. Morton Cty. Bd. of Comm'rs
 
 ,
 
 2010 ND 32
 
 , ¶ 17,
 
 778 N.W.2d 813
 
 ;
 
 see
 

 Reserve, Ltd. v. Town of Longboat Key
 
 ,
 
 17 F.3d 1374
 
 , 1380 (11th Cir. 1994) ("[A] landowner may have a property right in a building permit under Florida law where the circumstances that give rise to the doctrine of equitable estoppel are present-a landowner, in good faith, makes substantial changes in position, or incurs extensive obligations, in reliance on a building permit.");
 
 McCauley v. City of Jacksonville, N.C.
 
 ,
 
 739 F.Supp. 278
 
 , 283 (E.D. N.C. 1989),
 
 judgment aff'd
 
 ,
 
 904 F.2d 700
 
 (4th Cir. 1990) (finding a cognizable property interest to which federal due process protection extended where permittee acted in good faith and made substantial expenditures in reliance on the permit).
 

 [¶ 31] Property interests arise from statutes or other independent sources of law.
 

 "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."
 

 Board of Regents of State Colleges v. Roth
 
 ,
 
 408 U.S. 564
 
 , 577,
 
 92 S.Ct. 2701
 
 ,
 
 33 L.Ed.2d 548
 
 (1972) (finding no entitlement to re-employment in following year where neither contract nor statute or policy secured it for university employee). Property interests exist by the terms of the law under which they arise.
 
 See
 
 id.
 

 Every person is charged with knowledge of the law.
 
 Lumpkin
 
 ,
 
 308 N.W.2d 878
 
 , 880 (N.D. 1981). Validly enacted legislation provides "all the process that is due."
 
 See
 

 Logan
 
 ,
 
 455 U.S. at 433
 
 ,
 
 102 S.Ct. 1148
 
 (1982). Based on these three principles, a property interest obtained under a validly enacted ordinance presumes the recipient has received due process.
 

 [¶ 32] Here, the district court ruled the Township violated the Arnegards' due process rights by failing to publish the zoning regulations and amendments under N.D.C.C. § 58-03-10 (relating to the publication of township bylaws). The Township argues this was error. We agree. Township zoning regulations are not bylaws governed by § 58-03-10. The CUP the Arnegards received fell under zoning amendments created according to § 58-03-13, which does not require publication of zoning amendments. The Township validly enacted the March 2012 zoning amendments, including the one-year expiration.
 

 *753
 
 The published notice before the March 20, 2012, hearing and the public hearing fulfilled the requirements of due process in this case. Any property interest received by the Arnegards, as a creation of law, was only "protected" for the duration provided in the amendments.
 

 [¶ 33] The zoning ordinance under which the Arnegards received the CUP was validly enacted, thus their claim of due process violation for lack of notice fails because the procedure by which the March 2012 amendments were passed necessarily fulfills the requirements of due process.
 
 See
 

 Logan
 
 ,
 
 455 U.S. at 433
 
 ,
 
 102 S.Ct. 1148
 
 (1982). The interest the Arnegards received was a one-year CUP, on which they did not act, thus they did not have a protected property interest but merely an expectation of use at some point in the future.
 
 See
 

 Hagerott
 
 ,
 
 2010 ND 32
 
 , ¶ 17,
 
 778 N.W.2d 813
 
 . Because the Arnegards lacked a protected property interest, the district court erred by granting a directed verdict in their favor on the due process claim.
 

 VI
 

 [¶ 34] The Arnegards claim the district court abused its discretion in denying their motion to amend the complaint to include a
 
 42 U.S.C. § 1983
 
 claim for violation of due process. Claims under § 1983 require a court to determine "whether a constitutionally protected property or liberty interest [was] at stake and, if so, whether minimum procedural due process requirements were met."
 
 Ennis v. Williams Cty. Bd. of Comm'rs
 
 ,
 
 493 N.W.2d 675
 
 , 678 (N.D. 1992). Having determined the Arnegards lacked a due process claim, further discussion of this issue is unnecessary.
 

 [¶ 35] The Arnegards claim the district court erred by granting the Township's motion in limine to exclude evidence of offers to sell the property. The Arnegards intended to use this evidence to show diminution in value for damage calculations. Because of our resolution of the underlying claims, further discussion of this issue is unnecessary.
 

 [¶ 36] The Arnegards argue the district court erred in determining no party prevailed in the action for purposes of awarding costs under N.D.C.C. § 28-26-06. We review the district court's determination of prevailing parties de novo.
 
 WFND, LLC v. Fargo Marc, LLC
 
 ,
 
 2007 ND 67
 
 , ¶ 49,
 
 730 N.W.2d 841
 
 . "[T]he prevailing party to a suit, for the purpose of determining who is entitled to costs ... successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue ... the one in whose favor the decision or verdict is rendered and the judgment entered."
 
 Lemer v. Campbell,
 

 1999 ND 223
 
 , ¶ 9,
 
 602 N.W.2d 686
 
 (citation and quotation marks omitted). Because the district court erred in granting directed verdict in favor of the Arnegards on their due process claim, the district court also erred in failing to determine the Township prevailed for purposes of N.D.C.C. § 28-26-06 by successfully defending the suit.
 
 See
 
 id.
 

 We remand to the district court for determination of costs.
 

 VII
 

 [¶ 37] We affirm the judgment regarding dismissal of the Arnegards' breach of contract, actual fraud and equitable estoppel claims. We affirm the judgment regarding directed verdicts in favor of the Township on the negligence and deceit claims. We reverse the judgment regarding the Arnegards' due process claim and the award of nominal damages, and remand to the district court for resolution consistent with this opinion.
 

 [¶ 38] Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.